UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BRANDA PEEBLES and JOSHUA BERGER, Individually, and on BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br>     Plaintiffs, <br><br> vs. <br><br> JRK PROPERTY HOLDINGS, INC., STEVENS POND APARTMENTS PROPERTY OWNER, LLC, and ONE WEBSTER APARTMENTS PROPERTY OWNER, LLC, <br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CA #23-10523-NMG |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

| Section | | Page |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | BASIC FACTUAL BACKGROUND | 5 |
| | A. JRK, its Affiliated Entities and Residential Properties | 5 |
| | B. The Named Plaintiffs and JRK's Move Out Addendum | 6 |
| | C. The Instant Action and Legal Allegations | 7 |
| | D. Class Allegations, JRK's Stipulation and 30(b)(6) Testimony | 10 |
| | E. The Proposed Class(es) | 12 |
| III. | REASONS WHY CERTIFICATION SHOULD BE GRANTED | |
| | A. FRCP Rule 23 Standard | 13 |
| | B. Action Meets Rule 23 Prerequisites | 13 |
| | 1. Numerosity | 13 |
| | 2. Commonality | 14 |
| | 3. Typicality | 15 |
| | 4. Adequacy | 15 |
| | C. Common Questions Predominate - Class is Superior Method of Adjudication | 16 |
| | D. The Plaintiffs Meet Certification Requirements Under G. L. c. 93A | 18 |
| IV. | CONCLUSION | 19 |

I.     **INTRODUCTION**

This class action involves the Defendants' JRK Property Holdings, Inc. ("JRK"), Stevens Pond Apartments Property Owner, LLC ("Stevens Pond"), and One Webster Apartments Property Owner, LLC ("One Webster") (collectively the "Defendants" or "JRK") violations of the Massachusetts Security Deposit Statute, G. L. c. 186, §15B *et seq* and the Massachusetts Consumer Protection Act, MGL c.93A §2.

**Summary of Claim**. Specifically, Plaintiff alleges that JRK, as an owner and/or property manager of six (6) residential apartment complexes in the Commonwealth of Massachusetts comprised of over 1,000 apartment units, routinely deducts monies from its tenants' security deposit funds to remedy "reasonable wear and tear" in violation of G. L. c. 186, §§15B(4)(iii), (6)(e) and (6)(c) and MGL c.93A §2 and the regulations promulgated thereunder. JRK engages in this practice pursuant to a lease addendum (the "Move Out Addendum") that it includes in all its residential leases at all its properties. The Move Out Addendum requires tenants to have their apartment unit professionally cleaned prior to moving out, and if they do not, JRK deducts funds from the tenants' security deposit monies to remedy normal wear and tear such as touch-up painting and carpet cleaning. Every tenant at a JRK owned or managed property during the relevant time was subject to the Move Out Addendum charges.

As set out further below, the Plaintiffs allege that JRK unlawfully retained the security deposit monies of tenants at all of its properties during the relevant time period to remedy "reasonable wear and tear" in violation of G. L. c. 186, §§15B(4)(iii), (6)(e) and (6)(c). As a remedy, the Plaintiffs seek the return of *all* the withheld security deposit monies retained by JRK at *all* JRK properties during the time period. Further, the Plaintiffs have alleged that the inclusion of the Move Out Addendum in JRK's leases constitutes an unlawful lease provision in

violation of G. L. c. 186, §15B(6)(c), the penalty for which is also JRK's forfeiture of the entirety of the tenant's security deposit. Plaintiff also alleges that the alleged violations of the G. L. c. 186 constitute unfair and deceptive acts or practices in violation of the MGL c. 93A §2 and 940 Code of Mass Regulations §3.17(3)(a)(1); §3.17(4)(g); and §3.17(4)(k). Defendants failed to make a reasonable settlement offer in response to Plaintiff's August 1, 2019 Demand. G. L. c. 186, §15B(7) *mandates* damages in the amount of three times the entire security deposit, plus 5% (five percent) interest from the date of the violation as well as attorney's fees and costs for JRK's violation of G. L. c. 186, §15B(6)(e). MGL c. 93A §9 mandates double to treble damages for a knowing violation of the C. 93A §2, attorneys fees and costs.

**Action Removed & Remand Denied**. The named Plaintiffs, Branda Peebles ("Ms. Peebles") and Joshua Berger ("Mr. Berger"), are former tenants of JRK who on November 25, 2019 filed the instant class action lawsuit on behalf of themselves and all other similarly situated (collectively the "Plaintiffs") in Suffolk Superior Court for the Commonwealth of Massachusetts. Defendants removed the matter to this Court. By Order dated December 13, 2023, the Court denied Plaintiff's motion to remand the case (Doc. #13).

**Class Action Certification Requested**. The Plaintiffs now move this Honorable Court to certify a class of Plaintiffs pursuant to Fed. R. Civ. Proc. Rule 23 and MGL c. 93A §9. For the reasons set forth herein, the Plaintiffs' Motion for Class Certification should be allowed, and a class of Plaintiffs as proposed and defined by the Plaintiffs below should be certified.

## II. BASIC FACTUAL BACKGROUND

### A. JRK, its Affiliated Entities and Residential Properties

The Defendant JRK Property Holdings, Inc.("JRK") is a foreign corporation organized under the laws of California and registered to do business in the Commonwealth of Massachusetts. (See Business Entity Summaries attached hereto as **Exhibit A**).

JRK and its affiliated entities[1], including Defendants Stevens Pond Apartments Property Owner, LLC ("Stevens Pond"), and One Webster Apartments Property Owner, LLC ("One Webster"), own and/or manage six (6) residential apartment complexes in Massachusetts.[2]

On information and belief, JRK leases over 1,000 (one thousand) units to residents of the Commonwealth across its six residential apartment complexes.[3] As set out in greater detail below, given JRK's turnover rates, JRK entered into approximately 3,000 (three thousand) lease agreements with Massachusetts residents over the relevant time period for the instant action.

---

[1] Tewksbury Apartments Property Owner LLC, Cabot Crossing Apartments Property Owner LLC, Royal Crest Apartments Property Owner LLC, Essex Apartments Property Owner LLC, Stevens Pond Apartments Property Owner, LLC, and One Webster Apartments Property Owner, LLC. JRK shares a principal place of business and officers with each of these entities. For the purposes of this memorandum, any reference to "JRK" is meant to include these affiliated entities, as well as Defendant JRK Property Holdings, Inc. (See Ex. A).

[2] Residences at Tewksbury Commons, 7 Archstone Ave., Tewksbury, MA 01876; Essex Apartment Homes, 1 Avalon Dr., Peabody, MA 01960; The Residence at Stevens Pond, 1 Founders Way, Saugus, MA 01906; One Webster Apartment Homes, 1 Webster Avenue, Chelsea, MA 02150; Royal Crest Estates, 25 Courtney Street, Fall River, MA 02720; and Cabot Crossing, 130 Bowden Street, Lowell, MA 01852.

[3] Research conducted on JRK properties suggests there are 246 units at the Residences at Tewksbury, 121 units at One Webster, 326 units at Stevens Pond, 154 units at Essex Apartment Homes, 24 units at Royal Crest Estates, and 252 units at Cabot Crossing for a total of 1,123 units. (See Affidavit of Attorney Keith Sachs attached hereto as **Exhibit B**).

B. **The Named Plaintiffs and JRK's Move Out Addendum**

On August 17, 2017, Plaintiff Branda Peebles ("Ms. Peebles") and another entered into a one-year lease agreement with JRK to rent an apartment at JRK's Stevens Pond apartment complex, located in Saugus, Massachusetts. (See Peebles Lease (cover only) attached hereto as **Exhibit C**). JRK required a $500.00 (five hundred dollars) security deposit from Ms. Peebles, which she paid prior to moving in.

Ms. Peebles' lease contained a standard-form addendum entitled "Move Out Cleaning and Replacement Charges" (the "Move Out Addendum"), which was signed by Ms. Peebles and JRK. (See Peebles Move Out Addendum attached hereto as **Exhibit D**). The Move Out Addendum contained the following mandate at the top:

> **Resident is required to have the apartment professionally cleaned and carpet cleaned upon moveout. If the apartment is not returned to us in this condition the following charges will be applied.**

(Id.)(emphasis added). The Move Out Addendum then goes on to specify charges to be applied for remedying normal wear and tear to the apartment such as "carpet clean," "apartment clean" and "touch-up paint." (Id.).

Ms. Peebles vacated her apartment at Stevens Pond on August 18, 2018. On August 23, 2018, JRK sent a document entitled "Statement of Security Deposit" (the "Security Deposit Receipt") to Ms. Peebles. (See Peebles Security Deposit Receipt attached hereto as **Exhibit E**). Ms. Peebles' Security Deposit Receipt showed that JRK had deducted $50.00 (fifty dollars) from Ms. Peebles' security deposit monies for "Touch-up Paint" and $65.00 (sixty-five dollars) from Ms. Peebles' security deposit monies for "Carpet Clean per Lease," totaling $115.00 (one hundred and fifteen dollars) in deductions from Ms. Peebles' security deposit monies to remedy normal wear and tear allegedly done by her to her apartment. (Id.).

On July 21, 2018, Plaintiff Joshua Berger ("Mr. Berger") and another entered into a one-year lease agreement with JRK to rent an apartment at JRK's One Webster apartment complex, located in Chelsea, Massachusetts. (See Berger Lease (cover only) attached hereto as **Exhibit F**). JRK required a $1,000.00 (one thousand dollars) security deposit from Mr. Berger, which he paid prior to moving in.

Mr. Berger's lease also contained a standard-form addendum entitled "Move Out Cleaning and Replacement Charges," which was signed by Mr. Berger and JRK. (See Berger Move Out Addendum attached hereto as **Exhibit G**). The Move Out Addendum accompanying Mr. Berger's lease is identical to the Move Out Addendum accompanying Ms. Peebles' lease, containing the same above-produced cleaning mandate and associated charges. (Id.).

C. **The Instant Action and Legal Allegations**

On August 1, 2019, the undersigned sent a demand letter to JRK pursuant to G. L. c. 93A, seeking relief for Mr. Berger, Ms. Peebles, and all others similarly situated for JRK's unlawful retention of its tenants' security deposit monies to remedy normal wear and tear in violation of the Massachusetts Security Deposit Statute G. L. c. 186, §§15B(4)(iii), (6)(e) and (6)(c). (See 93A Demand Letter (without exhibits) attached hereto as **Exhibit H**). JRK responded to the Demand, but without a reasonable offer for settlement.

On November 25, 2019, the Plaintiffs filed the class action complaint (the "Complaint") in the instant action on behalf of themselves and all others similarly situated. (See Complaint (without exhibits) attached hereto as **Exhibit I**). The underlying allegations in the Complaint can be summarized as follows:

General laws c. 186, §15B(4)(iii) provides in pertinent part:

> (4) **The lessor shall, within thirty days after the termination of occupancy under a tenancy-at-will or the end of the tenancy as specified in a valid**

> **written lease agreement, return to the tenant the security deposit or any balance thereof**; provided, however, that the lessor may deduct from such security deposit for the following:
>
> \*\*\*
>
> (iii) a reasonable amount necessary to repair any damage caused to the dwelling unit by the tenant or any person under the tenant's control or on the premises with the tenant's consent, **reasonable wear and tear excluded**.

(emphasis added). Thus, JRK is not permitted to withhold its tenants' security deposit monies to remedy reasonable wear and tear.

The Plaintiffs have alleged that JRK's retaining monies from tenants' security deposits for things such as "touch-up paint" and "carpet clean" pursuant to the Move Out Addendum are violative of the above provision of the Security Deposit Statute. By unlawfully holding the tenants' security deposit monies, JRK has also violated the above provision by failing to return the tenants' security deposit monies within thirty days of termination of the tenancy. (Id.).

The penalty for failing to return a tenant's security deposit within thirty days in violation of section (4)(iii) is JRK's forfeiture to claim any portion of that tenant's security deposit for any reason whatsoever:

> (6) **The lessor shall forfeit his right to retain any portion of the security deposit for any reason**, or, in any action by a tenant to recover a security deposit, to counterclaim for any damage to the premises **if he**:
>
> \*\*\*
>
> (e) **fails to return to the tenant the security deposit or balance thereof to which the tenant is entitled after deducting therefrom any sums in accordance with the provisions of this section, together with any interest thereon, within thirty days after termination of the tenancy**.

G. L. c. 186, §15B(6)(e)(emphasis added).

Moreover, not only does JRK forfeit it's right to retain any portion of the tenants' security deposit monies for any reason whatsoever, the Security Deposit Statute mandates that

the remedy for the tenant is damages in the amount of three times the *entire* security deposit, plus 5% (five percent) interest from the date of the violation as well as attorney's fees and costs for JRK's violation of G. L. c. 186, §15B(6)(e):

> (7) If the lessor or his agent fails to comply with clauses (a), (d), or (e) of subsection 6, the tenant shall be awarded damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled plus interest at the rate of five per cent from the date when such payment became due, together with court costs and reasonable attorney's fees.

G. L. c. 186, §15B(7).

As an additional claim, the Plaintiffs have alleged that the inclusion of the Move Out Addendum constitutes an unlawful lease provision in violation of section 6(c) of the Security Deposit Statute. That section provides:

> (6) The lessor shall forfeit his right to retain any portion of the security deposit for any reason, or, in any action by a tenant to recover a security deposit, to counterclaim for any damage to the premises if he:
>
> \*\*\*
>
> (c) uses in any lease signed by the tenant any provision which conflicts with any provision of this section and attempts to enforce such provision or attempts to obtain from the tenant or prospective tenant a waiver of any provision of this section;

G. L. c. 186, §15B(6)(c). Here, the inclusion of the Move Out Addendum conflicts with the Security Deposit's prohibition on retaining tenants' security deposit funds to remedy wear and tear under section (4)(iii). Again, the penalty for JRK's inclusion of the unlawful lease provision is return of the entirety of the tenants' security deposit. (*Id.*).

As importantly, the Plaintiffs have alleged that the above-described conduct by JRK also constitutes *per se* unfair or deceptive acts or practices in trade or commerce in violation of G. L. c. 93A and the regulations promulgated thereunder by 940 Code of Mass Regs. 3.17(3)(a)(1), (4)(g), (4)(k). The Massachusetts Supreme Judicial Court has held that "the [A]ttorney [G]eneral

may make rules and regulations interpreting the provisions of [Chapter 93A]," thus, "when regulations define such acts or practices, evidence showing violations of the Attorney General's Regulations qualify as unfair or deceptive acts" as a matter of law. *Hebert v. Vantage Travel Service, Inc.*, 2021 WL 2516076 p. 3 (USDC DMa 2021) (citing *Casavant v. Norwegian Cruise Line Ltd.*, 460 Mass. 500, 504 (2011); See also *Khan v. Beacon Assocs., Inc.*, 91 Mass. App. Ct. 1118, 2017 WL 1476261, at 2 & n.4 (2017) ("landlord's inclusion of a late fee provision constituted a *per se* unfair or deceptive act or practice [under 940 C.M.R. § 3.17(3)(a)(1)]").

### D. Class Allegations, JRK's Stipulation and 30(b)(6) Testimony

The Plaintiffs have alleged that JRK engages in the above-described practices – withholding security deposit funds to remedy normal wear and tear pursuant to the Move Out Addendum – at all of its six properties in Massachusetts. The Plaintiffs allege that JRK uses the same Move Out Addendum and cleaning fee policies that the named Plaintiffs were subject to for all of its tenants at all of its properties – approximately 3,000 individual tenancies over the relevant time period. (See Ex. I).

Indeed, to that end, on June 17, 2021, the Defendants, by stipulation (the "Stipulation"), agreed that any tenant of Stevens Pond or One Webster during the relevant period would have been subject to the same exact lease and Move Out Addendum as Ms. Peebles and Mr. Berger. (See JRK Stipulation attached hereto as **Exhibit J**). The Stipulation also went on to provide the turnover rates for Stevens Pond and One Webster during the relevant time period. (Id.).

The Stevens Pond complex contains 326 (three hundred and twenty-six) units and the One Webster complex contains 121 (one hundred and twenty-one) units. (See Property Info Sheets attached hereto as **Exhibit K**). With a turnover rate of approximately 60%, Stevens Pond would have had approximately 900 (nine hundred) tenancies over the relevant time period. With

a turnover rate of approximately 71%, One Webster would have had approximately 375 (three hundred and seventy-five) tenancies over the relevant time period.

Based on JRK's Stipulation and documents provided in discovery, there are approximately 1,200+ tenants or former tenants of Stevens Pond and One Webster who were subjected to the same exact above-described unlawful lease provisions and addenda as the named Plaintiffs.

When JRK's other four properties are included, estimating an approximate turnover rate of 65%, there is an additional 1,800+ tenants or former tenants of JRK who the Plaintiffs have alleged were also subjected to the same exact above-described unlawful lease provisions and addenda as the named Plaintiffs and former residents of Stevens Pond and One Webster.

At deposition, JRK's 30(b)(6) deponent, Thomas Manzo ("Manzo"), confirmed and agreed with the Stipulation regarding the shared use of the same lease and Move Out Addendum at Stevens Pond and One Webster.  (See Full Mini Deposition Transcript of Thomas Manzo attached hereto as **Exhibit L** at 33:16-37:5; 46:11-24; 53:7-54:8; 60:4-19).  Further, Manzo agreed that "it would make complete business sense" for JRK to use the same form lease and Move Out Addendum at both of JRK's Stevens Pond and One Webster properties.  (Id. at 64:12-17).

When Manzo was asked whether JRK's properties other than Stevens Pond or One Webster use the same form lease and Move Out Addendum, counsel for the Defendants instructed Manzo not to answer.  (Id. at 65:2-9).  Finally, Manzo admitted that JRK maintains records such that it has the ability to determine the number of times and amounts of security deposit monies were withheld at JRK properties in Massachusetts for carpet cleaning and other cleaning charges during the relevant time period. (Id. at 71:1-74:23).

E.  **The Proposed Class(es)**

Plaintiffs seek to certify the following main class of Plaintiffs:

**Current and former tenants of any building owned or managed by JRK in the Commonwealth of Massachusetts during the relevant time period who paid a security deposit and whose lease contained the Move Out Addendum.**

Alternatively, the Plaintiffs would seek to certify any of the following sub-classes:

- Current and former tenants of any building owned or managed by JRK in the Commonwealth of Massachusetts during the relevant time period who paid a security deposit and who's lease contained the Move Out Addendum and who had any portion of their security deposit monies retained by JRK for any reason whatsoever.

- Current and former tenants of any building owned or managed by JRK in the Commonwealth of Massachusetts during the relevant time period who paid a security deposit and who's lease contained the Move Out Addendum and who had any portion of their security deposit monies retained by JRK for "carpet cleaning", "touch-up paint" or to remedy other normal wear and tear.

- Current and former tenants of Stevens Pond and One Webster during the relevant time period who paid a security deposit and who's lease contained the Move Out Addendum and who had any portion of their security deposit monies retained by JRK for any reason whatsoever.

- Current and former tenants of Stevens Pond and One Webster during the relevant time period who paid a security deposit and who's lease contained the Move Out Addendum and who had any portion of their security deposit monies retained by JRK for "carpet cleaning", "touch-up paint" or to remedy other normal wear and tear.

Clearly a class of individuals exists who have been wronged by the above-described conduct of JRK.  Indeed, the JRK Stipulation alone creates a certifiable 1,000+ member class of current and former tenants of Stevens Pond and One Webster over the relevant time period.  The Plaintiffs, however, seek to certify a class that will provide relief for *all* those who have been wronged by JRK.

### III. REASONS WHY CERTIFICATION SHOULD BE GRANTED

#### A. FRCP Rule 23 Standard

Rule 23 imposes a two-tier certification requirement:

**Prerequisites**. The "prerequisites" of certification under Rule 23(a) include: numerosity; commonality; typicality; and adequacy. FRCP Rule 23(a)(1)-(4).

**Predominance**. In addition, applicants must also meet one of the three requirements for "Types of Class Actions" under Rule 23(b) that includes (b)(3)'s requirement that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and the class action vehicle is "superior to other available methods."

Plaintiff's action meets both the "prerequisites" and "predominance" requirements of Rule 23.

#### B. Action Meets Rule 23 Prerequisites

##### 1. Numerosity

Under Rule 23(a)(1), certification is appropriate if the class is so large that "joinder of all members is impracticable." Rule 23(a)(1). "The plaintiff need not pinpoint the exact number of class members, so long as she can demonstrate the impracticality of joinder." *Donovan v. Phillip Morris USA, Inc.*, 268 FRD 1 (USDC MA 2010). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Garcia-Rubiera v. Calderon*, 570 F. 3d 443, 460 (1st Cir. 2009) (citing *Stewart v. Abraham*, 275 F. 3d 220, 226-27 (3rd Cir. 2001). The Plaintiffs have satisfied the numerosity requirement. As set out above, the putative class for all JRK buildings is approximately 3,000+ members. Indeed, the

class of Stevens Pond and One Webster tenants JRK has already admitted to, via the Stipulation, is approximately 1,000+ members.  Under such circumstances, it is clearly "impracticable" to litigate 3,000 identical claims against the same Defendant in 3,000 separate actions than to litigate it in one action.  It is also more efficient and a far less burdensome expense for the putative class tenants to be grouped together in a class action rather than bearing the cost of a lawsuit on their own.

  **2.  Commonality**

  Under Rule 23(a)(2), the plaintiff is required to show that "there are questions of law or fact common to the class."  Rule 23(a)(2).  "A question is common if it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Parent/Professional Advocacy League v. City of Springfield, Mass.*, 934 F. 3d 13 (1st Cir. 2019).  The 1st Circuit noted that the "Supreme Court explained [in *Wal-Mart Stores, Inc. v. Dukes*, 564 US 338, 350 (2011)] what really matters to class certification is not the raising of common questions as much as the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation." Id. at 28.  "Those common answers typically come in the form of a particularly and sufficiently well-fined set of allegedly illegal policies or practices that work similar harm on the class plaintiffs."  Id.  Here, "commonality" is straightforward.  The class claims all arise from JRK's unlawful retention of tenants' security deposit monies to remedy normal wear and tear pursuant to the Move Out Addendum included in every JRK lease.  Every claim by every proposed class member would be against the same defendant (JRK) for the same violations of G. L. c. 186, § 15B et seq., and G. L. c. 93A, and seeking the same relief: return of their unlawfully withheld security deposit monies, trebled, plus statutory interest, costs and attorney's fees.

### 3.    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims and defenses of the class." Rule 23(a0(3). "The class representative's claims are 'typical' under Rule 23(a)(3) when the named plaintiffs possess the same interest and suffer the same injury as class members." *Donovan v. Phillip Morris USA, Inc.*, *supra* at 10. The plaintiff can meet this requirement by showing that its "claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members and are based on the same legal theory." *Garcia- Rubiera v. Calderon*, 570 F. 3d 443, 460 (1st Cir. 2009) (citing Newberg & Alba Conte, Newberg On Class Actions §3.13 (3rd ed. 1992)). Here, there is a sufficient relationship between the injury to the named Plaintiffs and to the class. Ms. Peebles and Mr. Berger's claims, like those of the proposed class, arise out of JRK's unlawful retention of tenants' security deposit monies. Ms. Peebles had security deposit monies deducted to remedy normal wear and tear. JRK failed to return Mr. Berger's security deposit monies within 30 days. Both Ms. Peebles and Mr. Berger's leases contained the unlawful Move Out Addendum. JRK treated the named Plaintiffs the same as the proposed class as every JRK lease included the unlawful Move Out Addendum and JRK mishandled the security deposit funds of the proposed class.

### 4.    Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4). Adequacy requires a two-part showing: The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation." *Donovan v.*

*Phillip Morris USA, Inc.*, *supra* at 10 (citing *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985)). Here, the named plaintiffs have no adverse interests or conflicts with any of the proposed class members or their claims. The named plaintiffs are interested only in seeking relief for themselves and all others who are similarly situated and have suffered similar harm as a result of JRK's conduct. Finally, the undersigned is qualified and able to vigorously conduct the litigation in the case at bar. The undersigned is a seasoned litigator with over 25 (twenty-five) years of experience, including class action experience specifically in the security deposit/landlord-tenant field and in the consumer protection field more generally. See **Ex. B**.

C. **Common Questions Predominate - Class is Superior Method of Adjudication**

Having made the required showing under Rule 23(a), the Plaintiffs must "meet one of the Rule 23(b) requirements" which includes a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). "Rule 23(b)(3) is intended to be a less stringent requirement than Rule 23(b)(1) or (b)(2)." *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F. 3d 32, 41 (1st Cir. 2003). As the 1st Circuit has recognized, "[c]onsideration of the policy goals underlying Rule 23(b)(3)" can "support class certification." The Advisory Committee notes "constru[e] predominance as a prerequisite for obtaining economies of scale." Id. "The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." Id. "[T]he Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Id. "The Policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not

provide the incentive for any individual to bring a solo action prosecuting his or her rights." Id. "A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's … labor." Id. 42-42. "A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from any recovery." Id at 42. "Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." Id. at 40.

Here, all of the common issues regarding liability predominate:

- Did JRK violate the Security Deposit Statute by using tenants' security deposit funds to remedy normal wear and tear?

- Did JRK violate the Security Deposit Statute by failing to return the tenants' security deposit funds within thirty days of the end of the tenancy?

- Did JRK violate the Security Deposit Statute by including the Move Out Addendum in its leases with all its tenants?

- Did JRK violate the Consumer Protection Statute based on the above violations of the Security Deposit Statute?

Each of these claims regards a common legal theory and a common damage claim applicable to all members of the class. Damages, as specified by law, are easily determined by JRK's records regarding security deposit retention. Once the base amount retained is established, the rest of the damages are statutorily prescribed in the form of single, double or treble damages, interest, costs and attorney's fees. In addition, each of the individual claims are not substantial enough to justify the expense, time and risk of an individual action against the claimant's present or former landlord. The only practical way for the people impacted to receive

redress is to combine their claims into a class action. Only such collective action offers any substantial means of corrective relief.

### D. The Plaintiffs Meet Certification Requirements Under G. L. c. 93A

Plaintiff's action also meets the class certification requirements of M.G.L. c. 93A. JRK's violation of the Security Deposit Statute constitutes a violation of the Massachusetts Consumer Protection Statute, G. L. c. 93A §2 and the regulations promulgated thereunder. As set out further in the complaint, JRK's violations of the Security Deposit Statute are considered per se unfair or deceptive acts or practices of c. 93A §2 pursuant to 940 Code of Mass Regulations §3.17(3)(a)(1); §3.17(4)(g); and §3.17(4)(k).

MGL c. 93A §9 provides in pertinent part that a Plaintiff may bring the action on behalf of themselves and others similarly injured or situated if the court finds they adequately and fairly represent such other persons:

> (2) Any persons entitled to bring [a c. 93A §2] action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons …

Mass. Gen. Laws Ann. ch. 93A, § 9. As discussed above, the proposed class and named plaintiffs are similarly situated and have suffered a similar injury. They are all tenants or former tenants of JRK who paid a security deposit and had their security deposit monies unlawfully retained by JRK in violation of the Massachusetts Security Deposit Statute. The violation of the security deposit statute constitutes an unfair or deceptive act or practice in the conduct of a business in violation of c. 93A. See 940 Code of Mass Regulations §3.17(3)(a)(1); §3.17(4)(g); and §3.17(4)(k). They seek the same relief -- return of the unlawfully withheld security deposit

monies with any applicable statutory doubling or trebling, interest, costs and attorney's fees – from the same Defendant; JRK.

While a judge is afforded broad discretion in allowing or denying class certification, "pursuant to G. L. c. 93A, [a judge's] discretion to deny class certification is tempered by the 'public policy of the Commonwealth [which] strongly favors G. L. c. 93A class actions.'" *Bellerman v. Fitchburg Gas and Elec. Light Co*., 475 Mass. 67, 71 (2016).

"In considering certification under G. L. c. 93A, a judge must bear in mind the pressing need for an effective private remedy ... and that traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice." *Bellerman*, 470 Mass. at 52-53 (quoting *Aspinall v. Philip Morris Cos.,* 442 Mass. 381,442 (2004) (quoting *Fletcher v. Cape Cod Gas Co.,* 394 Mass. 595, 605-606 (1985)).  Here, there has been both a strong showing that Plaintiff's action satisfies each of the "prerequisites" of FRCP Rule 23(a) and the "predominance" requirements of Rule 23(b)(3).

In addition, this is the type of case that the consumer protection class action was designed to serve.  Each of the individual class member's claims are insufficient on their own to justify the expense, time, and risk associated with an individual action against their current or former landlord.  Certifying the class in this case would further the policies of the Commonwealth of Massachusetts consumer protection laws to afford redress on behalf of a large class of renters who have been subjected to a corporate policy that has been declared unlawful.

### IV.     CONCLUSION

For all of the reasons stated herein, the Plaintiffs have met all of the criteria for class certification under both Rule 23 of the Federal Rules of Civil Procedure as well as G. L. c. 93A.

The Plaintiffs respectfully request that this court allow the instant Motion for Class Certification and certify a class of Plaintiffs as defined above to the Court's satisfaction.

                                    BRANDA PEEBLES & JOSHUA
                                    BERGER, INDIVIDUALLY AND
                                    ON BEHALF OF ALL OTHERS
                                    SIMILARLY SITUATED,
                                    By their Attorneys,

/s/ *Keith L. Sachs*
Keith L. Sachs (BBO# 634025)
Shaun M. Khan (BBO# 681080)
DDSK Law LLC
900 Cummings Center
Suite 210-U
Beverly, MA 01915
P: (978) 338-6620
F: (978) 338-6621
ksachs@ddsklaw.com
skhan@ddsklaw.com

Dated:        March 21, 2024

## CERTIFICATE OF ELECTRONIC SERVICE

      Plaintiffs' counsel certifies that a copy of this document was served on counsel for Defendants by electronic filing in the Court's ECF electronic filing system.

Dated: March 21, 2024

/s/ *Keith L. Sachs*
Keith L. Sachs (BBO# 634025)