# EXHIBIT H

# DDSK | LAW
## DiGangi Dullea Sachs Khan

August 1, 2019

*Via Certified Mail, Return Receipt Requested*

JRK Property Holdings
11766 Wilshire Boulevard
Suite 1500
Los Angeles, CA 90025

One Webster Apartments Property
Owner LLC
11766 Wilshire Boulevard
Suite 1500
Los Angeles, CA 90025

Cabot Crossing Apartments Property
Owner LLC
11766 Wilshire Blvd Suite 1500
Los Angeles, CA 90025

Royal Crest Apartments Property
Owner LLC
11766 Wilshire Blvd Suite 1500
Los Angeles, CA 90025

Tewksbury Apartments Property Owner
LLC
11766 Wilshire Boulevard
Suite 1500
Los Angeles, CA 90025

Stevens Pond Apartments Property Owner
LLC
11766 Wilshire Boulevard
Suite 1500
Los Angeles, CA 90025

Essex Apartments Property Owner LLC
11766 Wilshire Boulevard
Suite 1500
Los Angeles, CA 90025

C/O
National Registered Agents, Inc.
155 Federal Street, Suite 700
Boston, MA 02110

Re:   **Claims on Behalf of Branda Peebles and on Behalf of All Other Persons Who Have Been Caused Similar Injury and Are Similarly Situated**

<u>**DEMAND LETTER PURSUANT TO MASSACHUSETTS GENERAL LAWS CHAPTER 93A, SECTION 9**</u>

DDSK Law LLC

JRK Property Holdings, et al.
PAGE 2
August 1, 2019

To whom it may concern:

This is a formal demand letter sent to you pursuant to Massachusetts General Laws Chapter 93A, § 9, on behalf of Branda Peebles and all other persons who have been caused similar injury and are similarly situated.

JRK Property Holdings, on behalf of its affiliated companies, One Webster Apartments Property Owner LLC, Tewksbury Apartments Property Owner LLC, Stevens Pond Apartments Property Owner LLC, Cabot Crossing Apartments Property Owner LLC, Royal Crest Apartments Property Owner LLC and Essex Apartments Property Owner LLC, manages and operates at least 6 (six) residential apartment complexes in Massachusetts:

1. Residences at Tewksbury Commons, 7 Archstone Ave., Tewksbury, MA 01876;
2. Essex Apartment Homes, 1 Avalon Dr., Peabody, MA 01960;
3. The Residence at Stevens Pond, 1 Founders Way Saugus, MA 01906;
4. One Webster Apartment Homes, 1 Webster Avenue Chelsea, MA 02150;
5. Royal Crest Estates, 37 Courtney Street, Fall River, MA 02720; and
6. Cabot Crossing, 130 Bowden Street, Lowell, MA 01852.

Based upon a review of the Essex County, Middlesex County, Bristol County and Suffolk County Registries of Deeds, as well as the Massachusetts Secretary of State's records, it is abundantly clear that JRK Property Holdings manages the above-listed apartment complexes on behalf of the individual LLCs with which JRK Property Holdings has common ownership. For purposes of this Demand, all entities named herein are collectively referred to as "JRK."

As described in greater detail below, JRK has systematically and continually violated G. L. c. 186, § 15B(4)(iii)(the "Security Deposit Statute"), by unlawfully retaining its tenants' security deposits or a portion thereof to pay for cleaning and other maintenance services that can only be attributed to "reasonable wear and tear." Specifically, JRK has been subsidizing, and continues to subsidize, its costs of doing business at the expense of the consumers of Massachusetts by unlawfully placing the financial burden of basic carpet cleaning and touch-up painting on all of its tenants through unlawful deductions from security deposits in direct violation of the Security Deposit Statute.

The Security Deposit Statute explicitly prohibits a landlord / owner from retaining any portion of a tenant's security deposit to remedy "reasonable wear and tear." To wit, the pertinent portion of the Security Deposit Statute provides:

DDSK Law LLC

JRK Property Holdings, et al.
PAGE 3
August 1, 2019

> (4) The lessor shall, within thirty days after the termination of occupancy under a tenancy-at-will or the end of the tenancy as specified in a valid written lease agreement, return to the tenant the security deposit or any balance thereof; provided, however, that **the lessor may deduct from such security deposit for the following:**
>
> \*\*\*
>
> (iii) a reasonable amount necessary to repair any **damage** caused to the dwelling unit by the tenant or any person under the tenant's control or on the premises with the tenant's consent, **reasonable wear and tear excluded**.

G. L. c. 186, § 15B(4)(iii)(emphasis added). Here, there can be no doubt that carpet cleaning and touch-up painting are the very definitions of "reasonable wear and tear" and therefore JRK may not retain its tenants' security deposit monies for such cleaning services.

In addition to the above-described practices of JRK being in clear violation of the Security Deposit Statute, violations of that statute constitute a violation of the Massachusetts Consumer Protection Statute, G. L. c. 93A, § 2, which makes it unlawful to engage in "unfair or deceptive acts or practices in the conduct of trade or commerce." G. L. c. 93A, § 2. Indeed, as the Massachusetts Attorney General's Regulations set out:

> (4) Security Deposit and Rent in Advance. **It shall be an unfair or deceptive practice for an owner to:**
>
> \*\*\*
>
> (f) fail to furnish to the tenant, within 30 days after the termination of occupancy under a tenancy-at-will or the end of the tenancy as specified in a valid written rental agreement, an itemized list of damage, if any, and written evidence indicating the actual or estimated cost of repairs necessary to correct such damage, in accordance with M.G.L. c. 186, § 15B;
>
> (g) **fail to return to the tenant the security deposit or balance thereof to which the tenant is entitled after deducting any sums in accordance with M.G.L. c. 186, § 15B**, together with interest, within thirty days after termination of occupancy under a tenancy-at-will agreement or the end of the tenancy as specified in a valid written rental agreement.

DDSK Law LLC

JRK Property Holdings, et al.
PAGE 4
August 1, 2019

940 Code Mass. Regs. 3.17(4)(f)-(g)(emphasis added).

  Here, the deducting of security deposit monies by JRK for "reasonable wear and tear" is in violation of the Attorney General's Regulations as those are not sums which JRK is entitled to deduct pursuant to the Security Deposit Statute. As such, JRK's deduction of security deposit monies for "reasonable wear and tear" constitutes an unfair or deceptive act or practice in violation of G. L. c. 93A, §§ 2, 9.

  Pursuant to G. L. c. 93A, JRK may be liable for double or treble damages, those damages being any unlawfully retained security deposit monies of JRK tenants through the above-described practices of JRK. Similarly, the Security Deposit Statute calls for treble damages in the event JRK unlawfully withheld security deposit monies for cleaning fees associated with "reasonable wear and tear". See Phillips v. Equity Residential Management, L.L.C., 478 Mass. 251, 260-261 (2017)(landlord/owner responsible for treble damages and attorney's fees pursuant to G. L. c. 186, § 15B(7) for unlawfully retaining security deposit funds for "cleaning or repair" charges).

  Without question, a finding of liability under G. L. c. 93A will require that JRK pay attorneys' fees incurred in pursing this action against JRK. JRK has thirty (30) days from receipt of this letter in which to respond and make a reasonable offer of settlement. Failure to make said offer within the prescribed timeframe may expose JRK to additional violations of G. L. c. 93A.

## FACTS

  On August 17, 2017, Branda Peebles ("Ms. Peebles") and Brian Twomey entered into a one-year residential lease agreement with Stevens Pond Apartments, located at 4723 Scotts Mill Court, Saugus, Massachusetts. (See Lease Attached as **Exhibit A**). Ms. Peebles was required to pay a $500.00 security deposit, which was paid prior to moving into the apartment. An addendum attached to the lease, entitled "Move Out Cleaning & Replacement Charges" was signed by all parties. (See Lease Addendum Attached as **Exhibit B**).

  The Addendum states that "Resident is required to have the apartment professionally cleaned and carpet cleaned upon move out. If the apartment is not returned to us in this condition the following charges will be applied." See Ex. B. The Addendum then lists the costs for basic cleaning and maintenance for what can only be described as "normal wear and tear" occasioned by a residential tenancy, such as, among other things, carpet cleaning, touch up painting and apartment cleaning.

  At the conclusion of the lease, Ms. Peebles vacated the apartment on August 18, 2018. On August 23, 2018 a "Statement of Security Deposit." was sent to Ms. Peebles

DDSK Law LLC

JRK Property Holdings, et al.
PAGE 5
August 1, 2019

and Mr. Twomey. (See August 23, 2018, Statement of Security Deposit, attached as **Exhibit C**). This statement indicates that deductions were taken from Ms. Peebles' security deposit under the category "New Charges." Id. These charges were listed as $50.00 for "Touch-Up Paint" and $65.00 for "Carpet Clean per Lease," for a total deduction of $115.00 from their security deposit. Id.

    The JRK lease documents and policies make it impossible for JRK not to violate the statutes discussed herein. At the inception of each tenancy, the lease contemplates that a tenant must either (1) pay for "reasonable wear and tear" out of their own pocket at lease end; or (2) have their security deposit monies unlawfully deducted for "reasonable wear and tear" at lease end. In either scenario, JRK impermissibly requires a tenant to pay for "reasonable wear and tear" in violation of law. Simply put, JRK cannot pass the cost of doing business onto the consumer tenants of the Commonwealth.

    Upon information and belief, and based upon the standard form lease and addenda used by JRK and JRK's common ownership and management of the six (6) properties identified above, it is clear that JRK employs the same unfair and deceptive acts or practices described herein at each of the six properties it owns and manages in the Commonwealth. Accordingly, relief on a class-wide basis is appropriate.

## I. STATUTORY AUTHORITY

Chapter 93A, § 9(1) provides:

> **any** person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation thereunder…may bring an action in the superior court…for damages…

G. L. c. 93A, § 9(1) (emphasis added). Section 2 declares "unlawful" any "unfair or deceptive acts or practices in the conduct of any trade or commerce". G. L. c. 93A, § 2.

Chapter 93A, § 9(2) further states that a person may:

> if the use or employment of the unfair or deceptive acts or practice has caused similar injury to numerous other persons similarly situated and if the Court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly situated persons; . . .

G. L. c. 93A, § 9(2).

DDSK Law LLC

JRK Property Holdings, et al.
PAGE 6
August 1, 2019

The Claimants qualify as persons able to bring a 93A, § 9 action as lessees of residential property. JRK and the various housing complexes it owns or manages are Corporations and companies doing business in Massachusetts and are engaged in the conduct of trade or commerce. JRK's businesses involve Real Estate Development, Ownership, Operation, and Management.

**II.    JRK'S UNFAIR OR DECEPTIVE ACTS OR PRACTICES IN THE CONDUCT OF TRADE OR COMMERCE**

As described above, the retention of security deposit funds for "reasonable wear and tear" constitutes a clear violation of the Security Deposit Statute. That same conduct constitutes a violation of the Attorney General's regulations and, in turn, a violation of M.G.L. c. 93A.

The law allows for the retention of a security deposit under strict conditions as some measure of security for unpaid rent and reasonable amounts necessary to repair **damage** for which the tenant is responsible. See Jinwala v. Bizzaro, 24 Mass. App. Ct. 1, 4 (1987). The reasoning for the strict conditions of the Security Deposit Statute were discussed by the Massachusetts Appeals Court:

> By limiting the freedom of landlords and tenants to contract in this regard [see § 15B(8)], the Legislature manifested a concern for the welfare of tenants in residential property who, as a practical matter, are generally in inferior bargaining positions and find traditional avenues of redress relatively useless; i.e., the legal expense of chasing a security deposit would be more than the amount of the deposit." Goes v. Feldman, 8 Mass. App. Ct. 84, 91 (1979). Hampshire Village Associates v. District Court of Hampshire, supra at 152-153. Mellor v. Berman, supra at 282. To that end, the Legislature has provided that failure of a landlord to observe the security deposit law will result in forfeiture of the deposit, § 15B(6), and for some violations, if litigation is necessary to force the return of a deposit, see Castenholz v. Caira, 21 Mass. App. Ct. 758, 762-763 (1986), has mandated the imposition of treble damages, interest and costs, and attorney's fees. § 15B(7). See Hampshire Village Associates v. District Court of Hampshire, supra at 150-151. Mellor v. Berman, supra at 278-283.
>
> [T]he purpose of § 15B is seen not to be arbitrarily penal; rather, 'the underlying goal [is to establish] an "equitable relationship"' between tenants and Landlords. Castenholz v. Caira, 21 Mass. App. Ct. at 763, quoting from McGrath v. Mishara, 386 Mass. 74, 85 (1982).

DDSK Law LLC

JRK Property Holdings, et al.
PAGE 7
August 1, 2019

Jinwala v. Bizzaro, 24 Mass. App. Ct. 1, 4-6 (1987).

It is entirely clear, both as a matter of common sense and law, that general cleaning is not within "damages" contemplated by the security deposit statute:

> [T]he deductions for cleaning costs incurred as a result of a breach of lease may not be permitted by the statute which, as relevant here, provides that "[n]o deduction may be made from the security deposit for any purpose other than 'a reasonable amount necessary to repair any damage caused to the dwelling unit by the tenant or any person under the tenant's control or on the premises with the tenant's consent, reasonable wear and tear excluded.

Taylor v. Beaudry, 82 Mass. App. Ct. 105, 105 (2012) (citing M.G.L. c. 186, § 15B(4)(iii) (1984); see also Phillips v. Equity Residential Management, L.L.C., 478 Mass. 251, 260-261 (2017)(landlord/owner responsible for treble damages and attorney's fees pursuant to G. L. c. 186, § 15B(7) for unlawfully retaining security deposit funds for "cleaning or repair" charges).

To be sure, JRK is fully aware that it cannot retain security deposit funds for anything other than unpaid rent or damages, as it explicitly recognizes and states in its Leases: "You'll be liable for the following charges, if applicable: unpaid rent; repairs or damages **beyond normal wear and tear**, water /sewer charges and other amounts provided by law." See Ex. A at ¶ 37 (emphasis added).

### III. CHAPTER 93A PROVIDES FOR MULTIPLE DAMAGES FOR A "WILLFUL OR KNOWING VIOLATION" OF SECTION TWO

Chapter 93A provides that if Claimant prevails, recovery shall be in the amount of actual damages and:

> up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two.

M.G.L. c. 93A, § 9.

The amount that is multiplied is the amount of any judgment on the underlying claims regardless of the existence of available coverage. See G.L. c. 93A, § 9(3) ("For the purposes of this chapter, the amount of actual damages to be multiplied by the court

DDSK Law LLC

JRK Property Holdings, et al.
PAGE 8
August 1, 2019

shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim.")

Further, if the court finds there has been a violation, the Claimant(s) shall, in addition to other relief provided for, and irrespective of the amount in controversy, "be awarded reasonable attorneys fees and costs incurred in connection with said action". G.L. c. 93A, § 9(4).

### IV.   DEMAND FOR SETTLEMENT

Based on all of the foregoing, the Claimants hereby make the following Demand for Settlement for the aggregate total of damages to Claimants' financial loss:

**DEMAND:**

- Branda Peebles **and** all others similarly situated[1] demand the return of their entire security deposit where any portion was retained for the patently improper deduction of "reasonable wear and tear" maintenance/repairs, including, but not limited to, "Touch up paint" and "Carpet Clean per lease";

- Branda Peebles **and** all others similarly situated further demand that this amount be trebled as required by statute, as all of these practices are willful and knowing violations of Massachusetts law.

- Branda Peebles **and** all others similarly situated likewise demand that JRK immediately cease and desist in any further violations of 186, § 15B, specifically the unlawful retention of security deposits.

### V.   JRK IS OBLIGATED TO RESPOND TO THIS DEMAND WITHIN 30 DAYS WITH A REASONABLE OFFER OF SETTLEMENT IN ORDER TO AVOID THE POTENTIAL FOR MULTIPLE DAMAGES, ATTORNEY'S FEES AND COSTS

The purpose of the requirement for a demand letter is to encourage negotiation and settlement of a claim. Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975).

---

[1] "Similarly Situated" means all tenants of JRK owned or managed properties, as set forth above, whose security deposit funds – either in whole or in part – were retained to remedy "reasonable wear and tear" dating back four (4) years from the date of this demand.

DDSK Law LLC

JRK Property Holdings, et al.
PAGE 9
August 1, 2019

General laws chapter 93A, § 9(3) provides, if the court finds that the "refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated…section two" of Chapter 93A, then the court may award double or treble damages.  G.L. c. 93A, § 9(3); Brandley v. United States Fidelity & Guaranty Co., 819 F. Supp. 101, 200 (D. Mass. 1993); see also Leardi v. Brown, 394 Mass. 151, 166 (1985) (defendant's responses "too indefinite…to be regarded as reasonable"); Whelihan v. Markowski, 37 Mass. App. Ct. 209 (1994) (defendant's offer of settlement was not reasonable for plaintiff's injury).

The failure to make a reasonable offer of settlement like the failure to make any written response to this demand letter within 30 days can itself constitute a violation of Chapter 93A.  Any such failure can be considered "bad faith with knowledge or reason to know that the act or practice complained of violated said section two," thus triggering Chapter 93A's multiple damage provision.  Id.

The burden of proving that the settlement offer was reasonable, thereby precluding recovery for multiple damages and attorney's fees, is on the defendant-offeror.  Bachman v. Parkin, 19 Mass. App. Ct. 908, 910-11 (1984).

## VI.   CONCLUSION

For all of the above reasons, Branda Peebles, on behalf of herself **and** all other persons who have been caused similar injury and are similarly situated, pursuant to G.L. c. 93A, § 9, hereby make demand for settlement upon JRK as stated in Section IV above. JRK has 30 days from receipt of this letter to respond with a reasonable offer of settlement.  Failure to do so could subject JRK to liability for multiple damages and attorney's fees and costs in the event Claimants are forced to prosecute their claims to conclusion.

Recently, we have been able to use the negotiation envisioned by G.L. c. 93A to settle similar cases.  We are hoping this demand letter can spark similar negotiations toward a class settlement.

We look forward to receiving a written response within 30 days.

Sincerely,

D. Scott Dullea