## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRANDA PEEBLES and JOSHUA BERGER, individually, and on behalf of ALL OTHER SIMILARLY SITUATED,<br><br>        Plaintiffs,<br><br>v.<br><br>JRK PROPERTY HOLDINGS, INC., STEVENS POND APARTMENTS PROPERTY OWNER, LLC, and ONE WEBSTER APARTMENTS PROPERTY OWNER, LLC,<br><br>        Defendants. | Case No. 1:23-cv-10523-NMG |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

SUMMARY OF UNDISPUTED MATERIAL FACTS.......................................................2

I.      Defendants and Their Security Deposit Deduction and Refund Practices .........................2

II.     Peebles' Tenancy at Stevens Pond.....................................................................................3

III.    Berger's Tenancy at One Webster ....................................................................................4

PROCEDURAL HISTORY....................................................................................................4

LEGAL STANDARD..............................................................................................................5

ARGUMENT ...........................................................................................................................5

I.      Defendants are entitled to summary judgment on Peebles' claims because she
        cannot establish any violation of the security deposit statute or any injury. .....................6

        A.      Counts I, II, and III fail because the deductions to Peebles' security
                deposit for excess wear and repairs to her unit were proper...................................6

        B.      Count IV fails because the Move-Out Addendum, on its own, does not
                violate the security deposit statute. ......................................................................11

        C.      Count V fails because Peebles cannot prove any injury. .....................................15

II.     Defendants are entitled to summary judgment on Berger's claims because no
        deductions for reasonable wear or tear or damage to his unit were withheld from
        his security deposit..........................................................................................................16

        A.      Counts I, II, and III fail because it is undisputed that Defendants did not
                make any condition-related deductions from Berger's security deposit.............16

        B.      Count IV fails for the same reasons Peebles' claim fails......................................17

        C.      Count V fails for the same reasons Peebles' claim fails, and because
                Berger's individual claim for a delayed return of his security deposit
                balance does not satisfy the requirements for a c. 93A claim..............................17

                i.      Berger has no c. 93A claim for wear-and-tear deductions because
                        no such deductions were taken from his security deposit.........................17

                ii.     Berger has no c. 93A claim to the extent it rests on a delay in the
                        return of his security deposit balance.......................................................18

III.    Defendants should be awarded their reasonable attorneys' fees and costs........................19

CONCLUSION..............................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Azad v. Goodyear Tire & Rubber Co.*,
    2013 U.S. Dist. LEXIS 20944 (D. Nev. Feb. 14, 2013) .........................................................19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..............................................................................................................5

*Cofman v. Acton Corp.*,
    958 F.2d 494 (1st Cir. 1992) ...............................................................................................15

*Conley v. Roseland Residential Trust*,
    442 F. Supp. 3d 443 (D. Mass. 2020) ...................................................................................5

*Da Silva v. U.S. Bank, N.A.*,
    885 F. Supp. 2d 500 (D. Mass. 2012) .................................................................................19

*Estrada v. Rhode Island*,
    594 F.3d 56 (1st Cir. 2010) ...................................................................................................5

*Flood v. Bank of Am. Corp.*,
    780 F.3d 1 (1st Cir. 2015) .....................................................................................................5

*Hankey v. Town of Concord-Carlisle*,
    136 F. Supp. 3d 52 (D. Mass. 2015) ...................................................................................10

*Lewis v. Collective Brands, Inc.*,
    2014 U.S. Dist. LEXIS 138319 (D. Mass. Sept. 29, 2014) .................................................18

*Nightingale v. National Grid USA Serv. Co.*,
    2023 U.S. Dist. LEXIS 60653 (D. Mass. Apr. 6, 2023) .................................................16, 18

*RG Abrams Ins. v. Law Offices of C.R. Abrams*,
    342 F.R.D. 461 (C.D. Cal. 2022) ........................................................................................10

*Schreane v. Beemon*,
    575 Fed. Appx. 486 (5th Cir. 2014) ....................................................................................10

*Shaulis v. Nordstrom, Inc.*,
    865 F.3d 1 (1st Cir. 2017) ...................................................................................................16

*Taylor v. Am. Chemistry Council*,
    576 F.3d 16 (1st Cir. 2009) ...................................................................................................5

*Testa v. Wal-Mart Stores*,
    144 F.3d 173 (1st Cir. 1998) ..............................................................................10

*Townsend v. American Insulated Panel Co.*,
    174 F.R.D. 1 (D. Mass 1997) ............................................................................10

**State Cases**

*Chelsea Homes I L.P. v. McNeil*,
    2011 Mass. Super. LEXIS 2858 (Mass. Super. Ct. Dec. 5, 2011) ........................12

*Dague v. Carroll Realty Mgmt. Corp.*,
    2010 Mass. App. Unpub. LEXIS 628 (Mass. App. Ct. June 7, 2010) ...............7, 13

*Gallagher v. Tyler Realty Trust II, et al.*,
    No. 10H84CV000709 (Mass. Hous. Ct. Aug. 24, 2016) ...................................7, 13

*Greico v. Williams*,
    2018 Mass. Super. LEXIS 609 (Mass. Super. Ct. Dec. 17, 2018) ........................10

*Khan v. Beacon Assocs.*,
    2017 Mass. App. Unpub. LEXIS 422 (Mass. App. Ct. Apr. 25, 2017) ..................12

*Kiepert v. Raynes*,
    No. 14H84CV000395 (Mass. Hous. Ct. Jun. 13, 2016) ...................................7, 13

*Koplowitz v. Pettway*,
    2013 Mass. Super. LEXIS 1506 (Mass. Super. Ct. June 28, 2013) ......................12

*Lee v. Callender*,
    Case No. 17H84SC000079 (Mass. Hous. Ct. Oct. 24, 2017) .............................6, 13

*MCI WorldCom Communs, Inc. v. Dep't of Telecoms & Energy*,
    810 N.E.2d 802 (Mass. 2004) ...........................................................................15

*Merchants Nat'l Bank v. Stone*,
    5 N.E.2d 430 (Mass. 1936) ...............................................................................15

*Phillips v. Equity Res. Mgmt., LLC*,
    85 N.E.3d 12 (Mass. 2017) ...............................................................................11

*Slepoy v. Bickford*,
    Case No. 09SP01679 (Mass. Hous. Ct. July 27, 2009) ................................12, 15

*Tyler v. Michaels Stores, Inc.*,
    984 N.E.2d 737 (Mass. 2013) .......................................................................16, 18

**State Statutes**

G.L. c. 186, § 15B ........................................................................................ *passim*

G.L. c. 93A .................................................................................................. *passim*

**Federal Rules**

Fed. R. Civ. P. 54 ............................................................................................ 19

Fed. R. Civ. P. 56 .............................................................................................. 5

## INTRODUCTION

Plaintiffs Branda Peebles and Joshua Berger are each former residents of different Massachusetts residential properties owned and managed by Defendants. They take issue with a part of their lease titled "Move-Out Cleaning & Replacement Charges" (the "Move-Out Addendum"). The Move-Out Addendum provides estimates of potential charges for remedying excess wear or damage to an apartment unit—broken down by items that might commonly get damaged or broken (carpets, walls, doors, blinds, etc.). Plaintiffs' Class Action Complaint and Demand for Jury Trial ("Complaint") alleges that the mere inclusion of the Move-Out Addendum in their leases violates the Massachusetts security deposit statute, G.L. c. 186, § 15B(6)(c). The Complaint further contends that by enforcing the Move-Out Addendum, Defendants (a) violate G.L. c. 186, § 15B(4)(iii) by impermissibly charging tenants for reasonable wear and tear at the end of their tenancies, and (b) violate G.L. c. 186, § 15B(6)(e) by failing to return tenants' security deposits within 30 days of the tenancy's end without any deductions for reasonable wear and tear.

Plaintiffs' claims suffer from a fatal problem: neither Peebles nor Berger had deductions taken from their security deposit based on the Move-Out Addendum or for reasonable wear and tear. Specifically:

- Peebles left her unit in poor condition and was charged a portion of Defendants' actual costs for carpet repairs and painting, at amounts lower than those listed in the Move-Out Addendum. Peebles cannot rebut Defendants' evidence that these charges were for excess wear and damage because she spoliated the best evidence of the apartment's condition at move-out: photographs and videos taken by her and her co-tenant.

- Berger had no damage to his apartment, and consequently there were no condition-based deductions taken from his security deposit. Only an outstanding utility bill was deducted, as expressly permitted by statute.

Neither Plaintiff can prove their claims at trial. For these reasons and as more fully explained below, Defendants ask the Court to grant summary judgment on all counts, and award Defendants their attorney's fees and costs in defending this frivolous action.

## SUMMARY OF UNDISPUTED MATERIAL FACTS[1]

### I.    Defendants and Their Security Deposit Deduction and Refund Practices

Defendant Stevens Pond Apartments Property Owner, LLC owns and operates the apartment complex known as the Residences at Stevens Pond ("Stevens Pond"), located in Saugus, Massachusetts. SUMF ¶ 2. Defendant One Webster Apartments Property Owner, LLC owns and operates the apartment complex known as One Webster Apartments ("One Webster"), located in Chelsea, Massachusetts. *Id.* ¶ 4. Both entities are effectively controlled by Defendant JRK Property Holdings, Inc. ("JRK"). *Id.* ¶¶ 3, 5. JRK wholly owns JRK Residential Group, Inc., which provides property management services for Stevens Pond and One Webster.[2] *Id.* ¶¶ 6-7.

Like many landlords and property managers in Massachusetts, Defendants collect security deposits from new tenants to protect against damage that may occur during the tenancy. At the end of a tenancy, Defendants conduct a move-out walkthrough of the unit to determine if there is any damage or excessive wear to the unit. SUMF ¶ 9. Tenants are encouraged to participate in these walkthroughs. *Id.* ¶¶ 10-11. If damage or excessive wear to the unit is found, Defendants, in their judgment, may charge the tenant for some or all of the cost incurred to remedy it. *Id.* ¶¶ 12, 15, 16. What constitutes damage or excessive wear, and how much to charge for it, involves a significant amount of professional judgment, as well as communication between landlord and tenant. *Id.*

---

[1]    Defendants incorporate the contemporaneously-filed Statement of Undisputed Material Facts ("SUMF"). Each reference to a paragraph of the SUMF is intended also to reference the exhibits cited therein.

[2]    Defendants use the term "Defendants" throughout for ease of reference, but note that Peebles' claims are not properly pled against One Webster, and Berger's claims are not properly pled against Stevens Pond.

Defendants include provisions in their leases to educate tenants about the condition in which their unit should be left when they move out, the possibility that deductions may be taken from tenants' security deposits at the end of their tenancies, and tenants' and landlords' rights under Massachusetts law. SUMF ¶ 22 & Exs. 3, 9. At the end of each tenancy, after evaluating the unit, Defendants issue a "Statement of Deposit Account" ("SODA") indicating the specific amount and purpose of any deductions, and reflecting the balance of the security deposit that will be refunded to the tenant. *Id.* ¶¶ 16, 34, 72 & Exs. 5, 11.

## II.    Peebles' Tenancy at Stevens Pond

Peebles is a former resident of Stevens Pond. She and her co-tenant, Brian Twomey, resided at Stevens Pond from August 19, 2017 through August 18, 2018 under a one-year lease. SUMF ¶ 17. Peebles provided a $500.00 security deposit at the start of her tenancy. *Id.* ¶ 19. When she moved out of her unit in August 2018, she did not request a move-out walkthrough in advance of her move-out and did not attend the walkthrough conducted by the Stevens Pond staff. *Id.* ¶¶ 31-32. As a result of their walkthrough, property staff determined that there was excess wear and damage to the unit requiring touch-up paint, carpet cleaning, and apartment cleaning. *Id.* ¶ 33. Defendants incurred costs of $255.00 or more to remedy these issues, but charged Peebles' security deposit only $50.00 for touch-up paint and $65.00 for carpet cleaning. *Id.* ¶¶ 34-41. Peebles received a SODA reflecting these charges, along with a check for the balance of her security deposit, within thirty days after the end of her tenancy. *Id.* ¶¶ 34, 42. She did not contact Defendants with questions about these charges or ask that they be reconsidered, notwithstanding the fact that she was already in touch with her current law firm in this case. *Id.* ¶¶ 44, 48. Instead, in August 2019, one year after she moved out, the same firm sent JRK a demand letter challenging the deductions to her security deposit and provisions of her lease concerning move-out practices. *Id.* ¶ 79 & Ex. 17.

3

### III.    Berger's Tenancy at One Webster

Berger is a former resident of One Webster. He and his co-tenant resided at One Webster from July 21, 2018 until the end of August, 2019, under a 14-month lease, which Defendants permitted them to terminate early. SUMF ¶¶ 57-58, 62. Berger provided a $1,000.00 security deposit at the start of his tenancy. *Id.* ¶ 60. When he moved out, he requested and attended a walkthrough of his apartment unit. *Id.* ¶¶ 66-67. As a result of the walkthrough, One Webster staff determined that there was no damage to the unit beyond reasonable wear and tear. *Id.* ¶ 69. Therefore, the only deduction applied to his security deposit was for an outstanding utility bill. *Id.* ¶¶ 70-71. Defendants issued a SODA reflecting this charge, and sent Berger a check for the balance of his security deposit. *Id.* ¶¶ 72-74.

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint on November 25, 2019 in Massachusetts Superior Court. Plaintiffs claim that the Move-Out Addendum to their leases is an unlawful lease provision in violation of the Massachusetts security deposit statute, and that Defendants wrongfully deducted charges for reasonable wear and tear from their security deposits pursuant to this addendum. Counts I and II claim that Defendants violated G.L. c. 186, § 15B(4)(iii) and § 15B(6)(e) by retaining part of Plaintiffs' security deposits to remedy "reasonable wear and tear," and in so doing, not returning to Plaintiffs the balance of their security deposits to which they were entitled within 30 days. Count III asserts a violation of G.L. c. 186, § 15B(7), a damages provision that applies only if a landlord fails to comply with § 15B(6)(a), (d), or (e). Count IV claims that Defendants violated G.L. c. 186, § 15B(6)(c) by including the Move-Out Addendum in their lease. Count V asserts a c. 93A violation based on the alleged security deposit violations.

Fact discovery closed on December 30, 2022. On February 27, 2023, Plaintiffs filed a motion for class certification. Based on papers filed by Plaintiffs as part of the class certification

motion, Defendants removed the case to federal court under the Class Action Fairness Act. *See* ECF No. 1. Plaintiffs moved to remand the case to state court, but the Court denied Plaintiffs' motion on December 13, 2023. ECF No. 13. The Court thereafter set a schedule for class certification and summary judgment motions, and the parties agreed that contemporaneous briefing on the two motions would be most efficient.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." *Estrada v. Rhode Island*, 594 F.3d 56, 62 (1st Cir. 2010) (citation omitted). A "dispute" is "genuine" only if "a reasonable fact-finder could resolve [the dispute] in favor of either party." *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 7 (1st Cir. 2015). In construing a motion for summary judgment, courts "must ignore conclusory allegations, improbable inferences, and unsupported speculation." *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 24 (1st Cir. 2009) (internal quotation and citation omitted). Where, as here, the movant does not bear the burden of proof, the movant need only point out that there is an absence of proof essential to the non-movant's case. C*elotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Because no class has been certified, Defendants' summary judgment motion applies individually to the two named plaintiffs, Peebles and Berger.[3/]

## ARGUMENT

The undisputed record establishes that (1) the Move-Out Addendum does not conflict with the security deposit statute and therefore does not violate § 15B(6)(c); (2) Defendants did not

---

[3/]    *See, e.g.*, *Conley v. Roseland Residential Trust*, 442 F. Supp. 3d 443, 449 (D. Mass. 2020) (considering individual summary judgment motions while a class certification motion was pending on certain claims).

deduct charges for reasonable wear and tear from either of the Plaintiffs' security deposits, and therefore did not violate G.L. c. 186, § 15B(4)(iii) and § 15B(6)(e) as alleged; and (3) there can be no c. 93A violation because Defendants' deductions from Plaintiffs' security deposits were permissible. Accordingly, all of Plaintiffs' claims must be dismissed.

## I.    Defendants are entitled to summary judgment on Peebles' claims because she cannot establish any violation of the security deposit statute or any injury.

### A.    Counts I, II, and III fail because the deductions to Peebles' security deposit for excess wear and repairs to her unit were proper.

Peebles claims that Defendants violated G.L. c. 186, § 15B(4)(iii) and § 15B(6)(e) by retaining part of her security deposit to remedy "reasonable wear and tear." On the undisputed record, no reasonable factfinder could conclude that the deductions to Peebles' security deposit were solely for "reasonable wear and tear."

Section 15B(4)(iii) permits a landlord to deduct from a security deposit "a reasonable amount necessary to repair any damage caused to the dwelling unit by the tenant … reasonable wear and tear excluded." Section 15B(6)(e) provides that a landlord "forfeits" its "right to retain any portion of the security deposit for any reason" if it "fails to return to the tenant the security deposit or balance thereof to which the tenant is entitled after deducting therefrom any sums in accordance with the provisions of this section." Taken together, these provisions mean that a landlord may retain some or even all of a tenant's security deposit to remedy damage or excessive wear to the unit that exceeds "reasonable wear and tear."

What exceeds "reasonable wear and tear" is context-specific: it can be determined only by inspecting a given apartment unit at the time of move-out. It depends on many factors. SUMF Ex. 1, ¶ 14. Massachusetts courts are clear that charges for painting, cleaning, repairs, or replacements can all be appropriate charges if they are for excess wear or damage. *See, e.g.*, *Lee v. Callender*, Case No. 17H84SC000079, at 2-3 (Mass. Hous. Ct. Oct. 24, 2017) (attached at Add. 001) (charges

for paint ($51.00), replacement of two interior doors ($300.00), repair of damaged drywall ($105.00), and repair of damaged walls ($50.00) were all "properly deducted based upon damage (beyond reasonable wear and tear) attributable to the tenant"); *Dague v. Carroll Realty Mgmt. Corp.*, 2010 Mass. App. Unpub. LEXIS 628, at *2 (Mass. App. Ct. June 7, 2010) (Rule 1:28) (charges for painting and professional apartment cleaning were properly assessed to tenant's security deposit); *Gallagher v. Tyler Realty Trust II, et al.*, No. 10H84CV000709, at 3 (Mass. Hous. Ct. Aug. 24, 2016) (attached at Add. 004) (charges for repainting and remedying scratches and burns to the hardwood floor, among others, were properly assessed to tenant's security deposit); *cf. Kiepert v. Raynes*, No. 14H84CV000395, at 5 (Mass. Hous. Ct. Jun. 13, 2016) (attached at Add. 011) (acknowledging that a landlord may deduct "the cost of cleaning the unit above and beyond reasonable wear and tear," but concluding that there was no information in the record that the charge in that case was for "more than reasonable wear and tear"). Peebles herself testified that she believes "beyond reasonable wear and tear" means damages that "will have to be fixed before another tenant comes in," such as "paint chipped away, wood broken, just broken things or holes that don't have the same state that the apartment should in that will have to be fixed before another tenant comes in." SUMF ¶ 53; *see also id.* ¶¶ 54-56, 76-78.

Here, the undisputed record demonstrates that Defendants relied on their professional judgment to evaluate Peebles' unit and determined that there was excess wear warranting a partial deduction from Peebles' security deposit. SUMF ¶¶ 9-16, 33-35, 39. No portion of Peebles' security deposit was retained by Defendants for reasonable wear and tear—a fact that Peebles herself has acknowledged. *Id.* ¶ 56 & Ex. 4 - Peebles Dep. at 59:6-9 ("Q: Is it your view that these deductions were for what you would consider to be reasonable wear and tear to the unit? A: No.").

At the end of Peebles' tenancy, the on-site staff conducted a move-out walkthrough of Peebles' unit. SUMF ¶ 33. The staff member determined that there was excess wear and damage to the walls and the carpets. *Id.* The excess wear to the carpet required Defendants to hire a contractor to "power scrub" and "spot dye" the unit's carpet. *Id.* ¶ 36 & Ex. 7. Common sense dictates that a carpet does not require "power scrubbing" or "dying" unless there is deep or pervasive staining, and that a landlord would need to address these issues before showing the apartment to a prospective tenant. These services cost Defendants $155.00, but they charged Peebles less than half that amount ($65.00), determining that although some portion of the carpet's wear was reasonable, the remainder exceeded that. *Id.* ¶¶ 34-36 & Exs. 5, 7. This $65.00 charge was also less than the Move-Out Addendum's carpet-cleaning estimate of $80.00. *Id.* ¶ 41 & Ex. 3 at JRK0000078. As to the painting, the staff member determined that some touch-up paint was needed, and charged Peebles $50.00—one third of the $150.00 estimated for touch-up paint in the Move-Out Addendum. *Id.* ¶¶ 33-34, 39-41 &. Ex. 3 at JRK0000078.[4/] Defendants also paid $100.00 to have Peebles' unit professionally cleaned but did not charge Peebles for this, notwithstanding the Move-Out Addendum expressly listing an $80.00 "Apartment Clean" charge. *Id.* ¶¶ 34, 37-38 & Exs. 5, 6; *see* Ex. 3 at JRK0000078.

After making the above deductions, Defendants sent Peebles a SODA and refund check for the balance owed to her, all within the 30 days required by law. SUMF ¶¶ 34, 42. Rather than object to the refund check and challenge the deductions, Peebles did not question the charges or ask for supporting documentation until one year later, in 2019, when Peebles' counsel sent a demand letter to Defendants. *Id.* ¶¶ 43-45. If Peebles thought the charges were unwarranted, she could have contacted Defendants within a reasonable time after receipt of her SODA to potentially

---

[4/]    Defendants do not have a third-party invoice for painting services in the case of Peebles, because painting was usually handled by the Stevens Pond in-house maintenance staff during this time period. *See* SUMF ¶ 40.

resolve any dispute, but she did not. *Id.* Raising any issue in a reasonable time would also have had additional benefits: although it is Defendants' practice to take photographs during walkthroughs, they are only saved for a limited time, because tenants usually raise questions about security deposit deductions soon after they receive their SODA.[5/] *Id.* ¶ 14. Here, because Peebles did not raise an issue with the deductions to her security deposit until ***a year after she moved out***, Defendants no longer had any photographs from her move-out. *Id.* ¶ 46.

Peebles' awareness that the deductions applied to her security deposit were reasonable and permissible is further reflected in her conduct since initiating this litigation. During her deposition, Peebles admitted that she made no effort to preserve the photographs and videos she and her co-tenant, Brian Twomey, each took and exchanged with each other regarding the condition of their Stevens Pond unit upon move-out. SUMF ¶¶ 47-49. Despite speaking with the same legal counsel when she received her SODA in August 2018 as is now representing her here, despite having her counsel send a demand letter to Defendants in August 2019, and despite filing this lawsuit in September 2019, Peebles claims that she never attempted to access or preserve the photographs and videos she took at move-out until 2021—well after her preservation obligations began—when she received document requests from Defendants. *See id.* Peebles incredulously claims that, when she attempted to access these photographs on her Samsung Galaxy smartphone, she could not remember the password, and "it deleted everything on my phone." *Id.* ¶ 50. She further claims that she has no back-up of the files on this phone, and that even though she and Twomey exchanged the photographs and videos they took that day via email or text message, neither of them has any record of those exchanges either. *Id.* ¶ 52. As to the photographs and videos that Twomey took, Peebles testified they are no longer available because Twomey lost his phone "at sea" in the

---

[5/]    Although G.L. c. 186, § 15B(2)(d)(iii) requires landlords to maintain records regarding security deposit deductions for two years after the end of the tenancy, it does not require landlords to maintain photographs specifically.

summer of 2020, and despite having an iPhone, he did not use iCloud or any backup system to save his photos (even though Apple provides free iCloud access to iPhone users). *See id.* ¶ 51.

In failing to preserve these photographs and videos, Peebles spoliated evidence directly relevant to her claims. *See Townsend v. American Insulated Panel Co.*, 174 F.R.D. 1, 4 (D. Mass 1997) ("[S]poliation is the intentional, negligent, or malicious destruction of relevant evidence."). Given the ease with which cell phone data can be backed up (*e.g.* to a cloud service or external hard drive), courts have found that the failure to preserve cell phone records amounts to spoliation. *See, e.g.*, *Greico v. Williams*, 2018 Mass. Super. LEXIS 609, at *9 (Mass. Super. Ct. Dec. 17, 2018) (Salinger, J.) (finding spoliator "negligently destroyed and thus spoliated" calendar information on his cell phone because he "could easily have backed up his cell phone calendar to ensure that this information would not be lost if something happened to his phone"); *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 506, 513-14 (C.D. Cal. 2022) (awarding sanctions for spoliation, and finding such spoliation willful, where spoliator failed to back-up or otherwise image his cell phone before he traded it in, and made the trade-in after he received requests for production seeking cell phone records).

Based on Peebles' conduct, Defendants are entitled to an adverse inference that the spoliated evidence would have revealed that the wear and damage to Peebles' apartment exceeded "reasonable wear and tear." *See Schreane v. Beemon*, 575 Fed. Appx. 486, 490 (5th Cir. 2014); *Testa v. Wal-Mart Stores*, 144 F.3d 173, 177 (1st Cir. 1998). At the very least, Peebles' misconduct requires that all reasonable inferences as to the scope of such damage be made in Defendants' favor. *See, e.g.*, *Hankey v. Town of Concord-Carlisle*, 136 F. Supp. 3d 52, 72 (D. Mass. 2015) (Gorton, J.) (noting that "where the innocent party has produced some (not insubstantial) evidence in support of his claim, the intentional destruction of relevant evidence by the opposing party may

push a claim that might not otherwise survive summary judgment over the line" (citation and internal quotation marks omitted)).

Because Defendants have produced evidence supporting the deductions to Peebles' security deposit and are entitled to an inference in their favor based on Peebles' spoliation of photographs that would reflect the condition of her unit at move-out, no reasonable factfinder could conclude that Defendants violated § 15B(4)(iii) or (6)(e) in handling Peebles' security deposit. Defendants are entitled to summary judgment on Counts I and II of the Complaint as to Peebles. For the same reasons, Defendants are entitled to summary judgment on Count III as to Peebles. Count III asserts a violation of § 15B(7), which by definition applies only if a landlord "fails to comply with clauses (a), (d), or (e) of subsection 6." G.L. c. 186, § 15B(7); *Phillips v. Equity Res. Mgmt., LLC*, 85 N.E.3d 12, 14 , 18 (Mass. 2017). Because no reasonable factfinder could conclude that Defendants violated § 15B(6)(e) (they returned the balance of Peebles' security deposit within 30 days after move-out), they also could not have violated § 15B(7).

### B.    Count IV fails because the Move-Out Addendum, on its own, does not violate the security deposit statute.

In Count IV, Peebles incorrectly claims that the mere inclusion of the Move-Out Addendum in her lease violated G.L. c. 186, § 15B(6)(c), and thus she is entitled to a refund of the amounts withheld from her security deposit. Section 15B(6)(c) provides that a landlord "forfeits" its "right to retain any portion of the security deposit for any reason" if it (i) "uses in any lease signed by the tenant any provision which conflicts with any provision of this section" *and* (ii) "attempts to enforce such provision or attempts to obtain from the tenant … a waiver of any provision of this section."[6/] The second element of § 15B(6)(c) articulates the general rule that a

---

[6/]    Section 15B(6)(c) is not subject to the trebling and attorney's fees provision of § 15B(7). *See* G.L. c. 186, § 15B(7); *Phillips v. Equity Residential Mgmt., LLC*, 85 N.E.3d 12, 14, 18 (Mass. 2017). Accordingly, the most

tenant cannot recover simply because her lease contains an unlawful provision; rather, she must have suffered an injury as a result of it. *See Slepoy v. Bickford*, Case No. 09SP01679 (Mass. Hous. Ct. July 27, 2009) (attached at Add. 016); *see also Khan v. Beacon Assocs.*, 2017 Mass. App. Unpub. LEXIS 422, at *5 (Mass. App. Ct. Apr. 25, 2017) (Rule 1:28). Peebles also alleges that the Move-Out Addendum "conflicts" with § 15B(4)(iii), which provides that a landlord may deduct from a security deposit "a reasonable amount necessary to repair any damage caused to the dwelling unit by the tenant … reasonable wear and tear excluded." G.L. c. 186, § 15B(4)(iii); *see* Compl. at ¶¶ 48-54. There is no such conflict, as discussed in greater detail below.

The Move-Out Addendum provides that "Resident is required to have the apartment professionally cleaned and carpet cleaned upon move out." SUMF ¶¶ 24, 59. No portion of the security deposit statute prohibits landlords from requiring tenants to perform certain upkeep of their units during their tenancy. This is a matter of contract between landlord and tenant. Nowhere does the security deposit statute say, for example, that a landlord cannot require a tenant to leave a unit in "broom-clean condition,"[7/] or to keep 75% of the floors in the unit covered with carpeting, or to wash the windows in the unit every six months, or to caulk holes in the wall before moving out. In other words, the security deposit statute does not prohibit landlords from requiring certain conditions of cleanliness upon move-out; it provides only that a landlord cannot deduct the cost of repairs due to reasonable wear and tear from the tenant's security deposit.[8/]

---

Peebles could recover on Count IV is $115.00, the amount Defendants withheld from her security deposit. JRK offered Peebles this amount plus 12% interest in response to her c. 93A demand, and Peebles rejected it. *See* SUMF Ex. 15.

[7/]    It is a near-standard requirement that tenants leave a unit in "broom clean in the same condition it was at the time of rental" at the end of a tenancy. *See Koplowitz v. Pettway*, 2013 Mass. Super. LEXIS 1506, at *2 (Mass. Super. Ct. June 28, 2013); *Chelsea Homes I L.P. v. McNeil*, 2011 Mass. Super. LEXIS 2858, at *2 (Mass. Super. Ct. Dec. 5, 2011).

[8/]    Other laws, like the State Sanitary Code, impose maintenance and repair obligations on the landlord that cannot be shifted to the tenant via contract, but those laws are neither invoked in the Complaint nor applicable here.

The Move-Out Addendum then goes on to say: "If the apartment is not returned to us in this condition the following charges will be applied." SUMF ¶¶ 24, 59. It lists charges for Painting (Per Coat), Carpet Cleaning, Touch-Up Paint, and Apartment Clean, along with specific replacement and cleaning charges. *Id.* ¶¶ 25, 59 & Exs. 3, 9. Peebles asks the Court to draw two unsupported conclusions from the Move-Out Addendum's language that "the following charges will be applied": first, that the charges listed are ***necessarily*** for reasonable wear and tear, and therefore ***cannot*** be deducted from tenants' security deposits under any circumstances; and second, that Defendants ***actually imposed*** the charges listed on the Move-Out Addendum on Peebles' security deposit. There is no record evidence to support either conclusion. In fact, the record reveals the opposite.

First, Peebles has adduced no evidence that "painting" and "cleaning" charges are categorically charges for "reasonable" wear and tear and therefore automatically impermissible at the end of every tenancy in Massachusetts. When tenants challenge security deposit deductions, judges (usually sitting in Housing Court or District Court) evaluate the evidentiary record— including photographs of the unit; testimony of the tenant and the landlord; estimates, invoices, or receipts for the work performed; the length of the tenancy, and other circumstances unique to the tenancy (such as the number of roommates or pets living in the unit). They must make a case-by-case determination because there are incalculable gradations of conditions in apartment units. Sometimes, courts uphold charges for painting and cleaning; sometimes they do not. *See, e.g.*, *Lee*, Case No. 17H84SC000079 (Mass. Hous. Ct.); *Dague*, 2010 Mass. App. Unpub. LEXIS 628, at 2; *Gallagher*, No. 10H84CV000709 (Mass. Hous. Ct.); *Kiepert*, Case No. 14H84CV000395, at 5 (Mass. Hous. Ct.); *see also supra*, Section I.A. In sum, the Move-Out Addendum is evidence of what ***might*** happen ***after*** a "beyond reasonable wear and tear" determination is made by the

landlord; it is not evidence of what does or does not constitute reasonable wear and tear for any particular unit under any particular set of circumstances.

Second, Defendants' corporate designee testified that Defendants do not enforce the Move-Out Addendum. SUMF ¶¶ 15, 29-30, 65-66. The Addendum provides a guide for Defendants' employees handling the move-out process, not a set of requirements. As the record makes clear, if a tenant were to ask if they had to have their unit professionally cleaned, they would have been told by the property management staff that this was not necessary. *Id.* ¶¶ 28-30, 64. Notably, Peebles herself did not think she had to have her apartment professionally cleaned. *Id.* ¶ 28. Defendants did not actually require Peebles or other tenants to have their apartments or carpets professionally cleaned, and did not automatically apply ***any*** of the charges listed in the Move-Out Addendum. *Id.* ¶¶ 9, 12, 15, 28-30, 65-66. Thus, Defendants did not treat the Move-Out Addendum as a basis for charging tenants for reasonable wear and tear in violation of the security deposit statute. Instead, Defendants did what the statute permits them to do: assess Peebles' unit as compared to the condition it was in at move-in, and deduct from the security deposit the cost of any repairs for damages that exceed reasonable wear and tear. *Id.* ¶¶ 9, 12, 33. In Peebles' case, after conducting this assessment, the property staff determined that there was damage to the unit in excess of reasonable wear and tear, but not to an extent warranting the estimates listed on the Move-Out Addendum (or the amounts charged to Defendants to remedy it), and accordingly the staff charged Peebles lower amounts than set forth on the addendum. *Id.* ¶¶ 33-41.

Contrary to Peebles' claim, by providing an itemized list of estimated costs, the Move-Out Addendum actually ***complies*** with the security deposit statute. The Addendum provides tenants with notice of "the actual or estimated cost" of "repairs necessary to correct" certain types of damage and excess wear. *See* G.L. c. 186, § 15B(4)(iii). In Peebles' case, the actual cost was lower

14

than the quoted costs, and the amount charged to her was even lower than that. SUMF ¶¶ 33-41. This exercise of professional judgment demonstrates that Defendants did not attempt to enforce the Move-Out Addendum with respect to Peebles. *See, e.g.*, *Slepoy*, Case No. 09SP01679 (Mass. Hous. Ct.) (although lease contained provisions regarding handling of last month's rent that conflicted with the security deposit statute, plaintiff was not entitled to any relief on this basis because "it [did] not appear that the Landlord attempted to enforce these provisions as might trigger either single or treble damage liability under § 15B(6)(c), (e), (7)").

When the Peebles lease is viewed as a whole, no reasonable factfinder could conclude that the Move-Out Addendum either effected or attempted to effect a waiver of Peebles' statutory rights. *See Cofman v. Acton Corp.*, 958 F.2d 494, 498 (1st Cir. 1992) (contracts must be construed "'with reference to all of its language and to its general structure and purpose and in light of the circumstances under which it was executed'" (citation omitted); *MCI WorldCom Communs, Inc. v. Dep't of Telecoms & Energy*, 810 N.E.2d 802, 810 (Mass. 2004) (discerning the parties' intent must be based upon the language and context of the entire agreement); *Merchants Nat'l Bank v. Stone*, 5 N.E.2d 430, 433 (Mass. 1936) (courts must give effect to every contractual word and clause); SUMF ¶¶ 22-23 &. Ex. 3; *see also* SUMF Ex. 9 (Peebles Lease provisions). Accordingly, Defendants are entitled to summary judgment on Count IV of the Complaint.

### C.    Count V fails because Peebles cannot prove any injury.

In Count V, Peebles asserts a violation of the Massachusetts consumer protection statute, c. 93A, predicated on the alleged violations of the security deposit statute. *See* Compl. ¶¶ 60-62. Summary judgment must be granted for Defendants on this claim, because even if Peebles could prove a predicate violation of the security deposit statute (which she cannot), the undisputed record shows that she has no way of proving any injury flowing from the violation. She testified at her deposition that she *was not* charged for "reasonable wear and tear" (SUMF ¶ 56); if so, she cannot

15

possibly be injured. And having spoliated any photographic evidence of her apartment upon move-

out, she has no way of proving what she allegedly ***should*** have been charged upon move-out, if

anything, or for what. A *per se* statutory violation is not enough for a c. 93A violation. As this

Court has explained:

> [T]he invasion of a plaintiff's legal right in violation of M.G.L. c. 93A, § 2 does not
> establish the defendant's liability on its own. The plaintiff must also prove that she has
> "suffered a distinct injury or harm" caused by the deceptive act or practice that
> constituted a statutory violation.

*Nightingale v. National Grid USA Serv. Co.*, 2023 U.S. Dist. LEXIS 60653, at *5 (D. Mass. Apr.

6, 2023) (Gorton, J.) (quoting *Tyler v. Michaels Stores, Inc.*, 984 N.E.2d 737, 744 (Mass. 2013));

*see also Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017). Accordingly, Defendants are

entitled to summary judgment on Count V.

## II. Defendants are entitled to summary judgment on Berger's claims because no deductions for reasonable wear or tear or damage to his unit were withheld from his security deposit.

### A. Counts I, II, and III fail because it is undisputed that Defendants did not make any condition-related deductions from Berger's security deposit.

Defendants took no condition-related deductions from Berger's security deposit. SUMF

¶¶ 70-72. Berger's security deposit was returned to him in full, minus a small utility charge for the

final partial month of his tenancy. *Id.* ¶¶ 71-74. Therefore, he has no claim under Count I. Berger

also has no claim under Count II (G.L. c. 186, § 15B(6)(e)) or Count III (G.L. c. 186, § 15B(7)),

because those Counts are similarly predicated on damage-related deductions being applied to a

tenant's security deposit. *See* Compl. ¶¶ 38, 39, 41, 42, 47.[9] Berger ultimately admitted at his

deposition that these claims are inapplicable to him. SUMF ¶ 75.

---

[9] Further, as discussed above, Count III does not state a claim upon which relief can be granted. Section 15B(7) is a damages provision; it does not provide any cause of action.

**B.    Count IV fails for the same reasons Peebles' claim fails.**

Berger's claim in Count IV—that Defendants violated G.L. c. 186, § 15B(6)(c) by including the Move-Out Addendum in his lease—fails for the same reasons Peebles' claim fails. The facts surrounding Berger's tenancy are a prime example of why the Addendum cannot be a *per se* violation of G.L. c. 186, § 15B(6)(c). Notwithstanding the fact that the Addendum was included in Berger's lease, he ***did not*** have his apartment professionally cleaned as the Move-Out Addendum purportedly required, and Defendants ***did not*** charge him for any apartment cleaning, painting, carpet cleaning, or any other cleaning, repairs, or damages at the end of his tenancy. SUMF ¶¶ 63-72 & Ex.11; *see id.* Ex. 9 - Berger Lease at JRK0000198. Berger's experience, in ways different from Peebles' but equally illustrative, demonstrates that Defendants ***do not*** enforce the language of the Move-Out Addendum, let alone attempt to do so. Like Peebles, Berger had other lease provisions informing him of his rights under the security deposit statute, such that the inclusion of the Move-Out Addendum was not an attempt to obtain a waiver from him of his statutory rights. *See* Ex. 9 - Berger Lease, at JRK0000169-172 (¶¶ 16, 22, 35, 37), JRK0000198. Summary judgment must be granted on Count IV because Plaintiffs' own experiences demonstrate that the criteria for this claim are not met.

**C.    Count V fails for the same reasons Peebles' claim fails, and because Berger's individual claim for a delayed return of his security deposit balance does not satisfy the requirements for a c. 93A claim.**

**i.    Berger has no c. 93A claim for wear-and-tear deductions because no such deductions were taken from his security deposit.**

To the extent Berger's c. 93A claim rests on alleged deductions for "reasonable wear and tear" and the inclusion of the Move-Out Addendum, those claims fail for the reasons discussed above. Berger's deficiencies are uniquely acute, because Berger admitted that Defendants did not deduct ***anything*** from his security deposit for the condition of his unit upon move-out. SUMF

¶¶ 70-71. Berger thus has no injury from the inclusion of the Move-Out Addendum or from Defendants' alleged practices regarding security deposit deductions, nor any c. 93A claim on these grounds. *See Nightingale*, 2023 U.S. Dist. LEXIS 60653, at *5; *Tyler*, 984 N.E.2d at 744.

**ii.    Berger has no c. 93A claim to the extent it rests on a delay in the return of his security deposit balance.**

To the extent Berger claims that Count V is supported by Defendants' failure to return his security deposit within 30 days as required by G.L. c. 186, § 15B(4), and not by any challenge to the deduction from his security deposit, this cannot serve as the basis for a c. 93A claim here because (i) Berger did not satisfy the demand requirement for this claim, and (ii) it is not pled in the Complaint.

General Laws c. 93A, § 9(3) requires that a claimant mail a "written demand for relief … reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered" at least 30 days before filing a complaint. Only Peebles served a c. 93A demand letter; Berger did not. SUMF ¶¶ 79-80. Nothing in the Peebles letter demanded relief on the claim that Defendants took more than 30 days to issue a security deposit refund, or put Defendants on notice of such a claim. *See Lewis v. Collective Brands, Inc.*, 2014 U.S. Dist. LEXIS 138319, at *2-3 (D. Mass. Sept. 29, 2014) ("class members may join as plaintiffs without filing their own demand letters, but only after a named plaintiff has filed an initial demand letter that satisfies the statutory prerequisite"). Peebles' demand letter focuses exclusively on the Move-Out Addendum and alleged security deposit deductions for "reasonable wear and tear," and discusses the 30-day return requirement only in this context. SUMF Ex. 17. Peebles' letter is clearly about the amount withheld (and correspondingly the amount returned) from the security deposit, not about the timing of her partial refund.

18

The demand letter is a prerequisite for a c. 93A claim. *See Da Silva v. U.S. Bank, N.A.*, 885 F. Supp. 2d 500, 505-06 (D. Mass. 2012). It exists to allow defendants to make a settlement offer and resolve consumer complaints. *Id.* (a purpose of the c. 93A demand letter is to "encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct"; "[t]here can … be no opportunity to settle a claim if that claim is not mentioned in the demand letter" (internal citations and quotations omitted)). This requirement was not met here with respect to Berger's independent claim, and Berger may not recover on Count V.

## III.    Defendants should be awarded their reasonable attorneys' fees and costs.

This litigation has lasted for almost five years due to Plaintiffs' counsel's lack of diligence in prosecuting it. Defendants have incurred needless expense defending against Plaintiffs' on-again, off-again litigation tactics. Along the way, Plaintiffs' counsel did not ensure that his clients preserved relevant evidence, resulting in spoliation and warranting sanctions. *See, e.g.*, *Azad v. Goodyear Tire & Rubber Co.*, 2013 U.S. Dist. LEXIS 20944, at *10 (D. Nev. Feb. 14, 2013). For these reasons, Defendants should be awarded their reasonable attorneys' fees and costs in defending this action. *See* Fed. R. Civ. P. 54.

## CONCLUSION

For the forgoing reasons, Defendants request that this Court grant their Motion for Summary Judgment as to all counts alleged in the Complaint, and award Defendants their reasonable attorneys' fees and costs in this litigation.

Respectfully submitted,

**JRK PROPERTY HOLDINGS, INC.,
STEVENS POND APARTMENTS
PROPERTY OWNER, LLC, and ONE
WEBSTER APARTMENTS PROPERTY
OWNER, LLC,**

By their attorneys,

*/s/ Mathilda S. McGee-Tubb*
Thomas H. Wintner (BBO # 667329)
Mathilda S. McGee-Tubb (BBO # 687434)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
617.542.6000 (telephone)
617.542.2241 (fax)
twintner@mintz.com
msmcgee-tubb@mintz.com

Dated: April 8, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on April 8, 2024.

By:    <u>*/s/ Mathilda S. McGee-Tubb*</u>

21