**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BRANDA PEEBLES and JOSHUA BERGER, individually, and on behalf of ALL OTHER SIMILARLY SITUATED,<br><br>    Plaintiffs,<br><br>v.<br><br>JRK PROPERTY HOLDINGS, INC., STEVENS POND APARTMENTS PROPERTY OWNER, LLC, and ONE WEBSTER APARTMENTS PROPERTY OWNER, LLC,<br><br>    Defendants. | Case No. 1:23-cv-10523-NMG |

## DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Leave to file reply brief granted by Local Rule 56.1 and ECF No. 16 (Mar. 15, 2024)*[1]

---

[1]    Defendants submit this consolidated brief in opposition to Plaintiffs' cross-motion for summary judgment (ECF No. 30) and reply in support of Defendants' motion for summary judgment (ECF No. 23) to streamline the papers before the Court.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................3

I.     PLAINTIFFS' CLAIMS REST ON THE FLAWED THEORY THAT THE
MOVE-OUT ADDENDUM VIOLATES SECTION 15B(6)(C) AND C. 93A..................4

     A.     The mere inclusion of a lease provision at odds with Section 15B, without
more, does not require forfeiture of a security deposit under Section
15B(b)(c)..................................................................................................................4

     B.     Defendants did not enforce any conflicting lease provision or seek a
waiver of Plaintiffs' rights under the security deposit statute..................................5

     C.     Plaintiffs' invocation of outdated case law does not save their c. 93A
claim........................................................................................................................7

II.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
PEEBLES' CLAIMS. .....................................................................................................9

     A.     Plaintiffs have not offered any definition of "reasonable wear and tear"
that would include the charges imposed against Peebles' security deposit. ...........9

     B.     Peebles cannot benefit from an inference in her favor as to the nature of
her security deposit deductions where probative evidence no longer exists
because of her own conduct..................................................................................11

     C.     Concluding that the charges imposed on Peebles' security deposit are for
"reasonable wear and tear" based on their descriptions on the Peebles
SODA will create perverse incentives for landlords...............................................12

     D.     Peebles' new claim that she did not receive an "itemized list of damages"
is not pled in the Complaint and not supported by the documentary
evidence. ..............................................................................................................14

III.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
BERGER'S CLAIMS. ....................................................................................................14

IV.     PLAINTIFFS' CROSS-MOTION SHOULD BE DENIED BECAUSE IT IS
BOTH LATE AND PROCEDURALLY IMPROPER.......................................................15

V.     TO THE EXTENT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IS
ON BEHALF OF A YET-TO-BE-CERTIFIED CLASS, PLAINTIFFS' BRIEF
DEMONSTRATES WHY RELIEF CANNOT BE GRANTED ON A
CLASSWIDE BASIS, AND WHY NO CLASS CAN BE CERTIFIED ON
THESE CLAIMS. ..........................................................................................................16

i

CONCLUSION.................................................................................................................18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Commerce Ins. Co. v. Blackburn*,
   964 N.E.2d 1005 (Mass. App. Ct. 2012) ..................................................................7

*Conley v. Roseland Residential Trust*,
   442 F. Supp. 3d 443 (D. Mass. 2020) .....................................................................8

*Fin. Res. Network, Inc. v. Brown & Brown, Inc.*,
   867 F. Supp. 153 (D. Mass. 2012) .........................................................................16

*Frady v. C. R. Bard, Inc.*,
   2020 U.S. Dist. LEXIS 76168 (D. Mass. Apr. 30, 2020) ......................................15

*Grenier v. Cyanamid Plastics, Inc.*,
   70 F.3d 667 (1st Cir. 1995) ....................................................................................15

*Hershenow v. Enter. Rent-a-Car Co. of Bos.*,
   840 N.E.2d 526 (Mass. 2006) ..................................................................................8

*Jacobellis v. Ohio*,
   378 U.S. 184 (1964) ...............................................................................................10

*Kwaak v. Pfizer, Inc.*,
   881 N.E.2d 812 (Mass. App. Ct. 2008) ...................................................................8

*Montany v. Univ. of New England*,
   858 F.3d 34 (1st Cir. 2017) ....................................................................................15

*Nightingale v. National Grid USA Serv. Co.*,
   2023 U.S. Dist. LEXIS 60653 (D. Mass. Apr. 6, 2023) ..........................................8

*Phillips v. Equity Res. Mgmt.*,
   85 N.E.3d 12 (Mass. 2017) .......................................................................................9

*Ransom v. FIA Card. Servs., N.A.*,
   562 U.S. 61 (2011) ....................................................................................................5

*Tyler v. v. Michaels Stores, Inc.*,
   984 N.E.2d 737 (Mass. 2013) ..............................................................................7, 8

**Statutes**

G.L. c. 93A.............................................................................................................. *passim*

G.L. c. 186, § 15B ............................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 56(c) .............................................................................................................11

Fed. R. Civ. P. 56(e)(3)..........................................................................................................9

## INTRODUCTION

Plaintiffs' claims rest on a thin reed: that the Move-Out Addendum attached to their leases required them to waive certain rights under the Massachusetts security deposit statute, and that, as a result, Defendants must return the entire withheld portion of their security deposits. The undisputed record demonstrates otherwise. There is no conflict between the Move-Out Addendum and the security deposit statute. And even if Plaintiffs could demonstrate a conflict, the undisputed record establishes that Defendants did not enforce the provision at issue, and there was no waiver of Plaintiffs' rights under the statute.

Plaintiffs' own experiences make plain that there was no waiver of their rights under the security deposit statute. Neither Plaintiff had their apartment professionally cleaned, as the Move-Out Addendum purported to require, and both Plaintiffs expected that their security deposits would be returned nonetheless. In fact, those security deposits *were* returned to both Plaintiffs, less proper deductions. Neither Plaintiff got less than what the statute requires and entitles them to: each got a Statement of Deposit Account reflecting the deductions to their security deposits and the reasons for them; each had an opportunity to receive additional documentation for those deductions; and each received a check for the balance of their security deposit to which they were entitled.

Peebles' challenge also rests on her contention that the condition-related deductions to her security deposit were for "reasonable wear and tear" and therefore not permissible under the security deposit statute. (Berger has no such challenge, because he had no condition-related deductions to his deposit.) But Peebles has offered no evidence to support her claim that her apartment was in the same condition upon move-out as when she moved in, even accounting for reasonable wear and tear. Conveniently, she cannot offer such evidence: she failed to preserve, even after initiating this lawsuit and conducting discovery, the photographs she claims to have

taken to document the condition of her unit upon move-out. What's more, she waited over a year to tell Defendants she disputed the charges, denying Defendants the opportunity to preserve relevant evidence. In the absence of any evidence to the contrary, the undisputed record and inferences appropriately drawn from it require a factfinder to conclude that the condition-related deductions to Peebles' security deposit were for damage beyond what was reasonable for her specific tenancy.

To the extent Plaintiffs seek summary judgment on a classwide basis, that request fails for the same reasons and more. The Move-Out Addendum, without any demonstrated harm, does not create an actionable claim for any proposed class member. The undisputed distinctions between Peebles' and Berger's experiences—Peebles had security deposit deductions based on the condition of the unit at move-out, and Berger did not—demonstrate that material distinctions exist amongst proposed class members with respect to any claimed harm. Consider this scenario: the Court rejects Plaintiffs' blanket claim that the Move-Out Addendum's mere existence precludes Defendants from charging any tenant for unit damage, but nonetheless determines that on *this* record, at the end of *this* tenancy, under *these* specific circumstances, the charges imposed on Peebles' security deposit were not for damage or wear in excess of "reasonable wear and tear." (The same could not be said as to Berger, as he had no such charges.) The very need to consult an evidentiary record rooted in the state of Peebles' unit at move-out demonstrates that her claims are not capable of classwide resolution. Plaintiffs' proposed class is uncertifiable on this basis (among others set forth in Defendants' opposition to Plaintiffs' motion for class certification), and likewise is not entitled to judgment.

There is no genuine dispute of material fact regarding either of the named Plaintiffs, and no basis on which to certify a class or grant relief to a class. Defendants are entitled to judgment as a matter of law.

## ARGUMENT

A threshold requirement for summary judgment is the absence of a genuine dispute as to any material fact. Here, there are no disputes as to what happened with each named Plaintiff. In response to Defendants' statement of facts, Plaintiffs dispute only ***one*** paragraph, and do not dispute ***any*** of the quoted or cited evidence in any of the other paragraphs. *See* ECF No. 29 at ¶ 39. In many instances, Plaintiffs agree with Defendants' characterization of that evidence. *See, e.g.*, ECF No. 29 at ¶¶ 15, 16, 29, 30. For a small number of Defendants' articulated facts, Plaintiffs dispute only the inferences that can be drawn from them, which the Court is free to draw for itself. *See, e.g.*, ECF No. 29 at ¶¶ 9-12, 35-37, 41, 56. As to Plaintiffs' cross-motion, that motion is untimely and procedurally improper, and the purported facts upon which it relies are not supported by any actual evidence.

This leaves only two questions for the Court, both of which must be resolved in Defendants' favor. First, is the Move-Out Addendum contrary to the Massachusetts security deposit statute, and if it is, did Defendants attempt to enforce it or procure a waiver of Plaintiffs' rights under that statute through the Addendum? The answer is indisputably no. Second, is there any evidence plausibly suggesting that the deductions to Peebles' security deposit were, under the circumstances, for charges to remedy reasonable wear and tear, and therefore impermissible? Again, the answer is no.

I.  **PLAINTIFFS' CLAIMS REST ON THE FLAWED THEORY THAT THE MOVE-OUT ADDENDUM VIOLATES SECTION 15B(6)(C) AND C. 93A.**

Plaintiffs contend that the Move-Out Addendum violates G.L. c. 186, § 15B because it "1) required tenants to do what they were not legally required to do, namely, 'professionally clean' their unit before 'move-out'; and 2) the failure of the tenant to carry out that obligation, contractually entitled Defendants to do what the statute prohibited them from doing, namely, make deductions from renter's deposits to remedy conditions resulting from 'reasonable wear and tear.'" ECF No. 28 ("Opp.") at 2. Plaintiffs further contend that the inclusion of the Move-Out Addendum constitutes an actionable "invasion of the Tenant class's interests" and a "loss" sufficient to support a c. 93A claim. *Id.* at 2, 4. Plaintiffs' other claims all flow from these contentions.

Even assuming that some part of the Move-Out Addendum is at odds with the security deposit statute (it is not), Plaintiffs' argument fails because it disregards the plain language of § 15B(6)(c) and the governing case law on c. 93A, both of which require ***actual*** offending conduct to have a cognizable claim. Because there is no evidence of any such conduct here, Defendants are entitled to judgment as a matter of law.

A.  **The mere inclusion of a lease provision at odds with Section 15B, without more, does not require forfeiture of a security deposit under Section 15B(b)(c).**

Section 15B specifically contemplates the situation alleged here, in which a lease contains a provision that conflicts with the rights and obligations conferred by the security deposit statute. In that situation, § 15B says that the lease provision is void and unenforceable. G.L. c. 186, § 15B(8).[2/] But § 15B also expressly provides that as long as a landlord does not attempt to enforce such a provision or attempt to obtain a waiver of a tenant's rights under the security deposit statute,

_____

[2/]    Section 15B(8) provides that "[a]ny provision of a lease which conflicts with any provision of this section and any waiver by a tenant or prospective tenant of any provision of this section shall be deemed to be against public policy and therefore void and unenforceable."

the landlord can still collect, hold, and make deductions from a tenant's security deposit, notwithstanding the presence of the offending lease provision. *See*, *e.g.*, G.L. c. 186, §§ 15B(6)(c), 15B(8). The landlord must simply do so consistent with the other provisions of the statute.

Under this plain statutory framework, the mere inclusion of language in the lease that is facially at odds with the security deposit statute is insufficient to require forfeiture of a security deposit. If the existence of a lease provision that "conflicts with any provision" of the security deposit statute meant that a landlord could not hold a security deposit from a tenant, then § 15B would say that. But it doesn't. It just says that the offending lease provision is void and unenforceable—*i.e.*, a court should treat the lease provision as if it doesn't exist. Section 15B is clear: it requires forfeiture of a security deposit only where the landlord "attempts to ***enforce*** such provision or attempts to ***obtain … a waiver*** of any provision of [§ 15B]." G.L. c. 186, § 15B(6)(c) (emphasis added); *see, e.g.*, *Ransom v. FIA Card. Servs., N.A.*, 562 U.S. 61, 70 (2011) (court "must give effect to every word of a statute wherever possible"). The landlord did neither here.

### B. Defendants did not enforce any conflicting lease provision or seek a waiver of Plaintiffs' rights under the security deposit statute.

The portion of the lease that Plaintiffs claim is at odds with the Massachusetts security deposit statute is the language in the Move-Out Addendum that purported to require tenants to "'professionally clean' their unit before 'move-out,'" and further stating that if the tenant did not have their unit professionally cleaned, enumerated charges on the Addendum "will be applied." Opp. at 2. As discussed in Defendants' opening brief, this lease language is not at odds with the security deposit statute. ECF No. 24 at 12-13. But even assuming it is, the undisputed factual record shows that Defendants did not attempt to enforce this provision as to the named Plaintiffs. They did not remind or tell Plaintiffs that they had to have their apartments professionally cleaned, and they did not charge Plaintiffs for apartment cleaning upon move-out. *See* ECF No. 29 at ¶¶ 28-

30, 37, 38, 64, 65, 70, 71. Nor did either named Plaintiff present evidence that they actually relied on the "professionally clean" language in the Addendum, or that they actually paid for such a service before move-out. *See id.* at ¶¶ 27-28, 63-65. Defendants also did not attempt to enforce other aspects of the Move-Out Addendum. Defendants imposed only two condition-related charges on Peebles' security deposit, at amounts lower than those listed on the Move-Out Addendum. And on Berger's security deposit, Defendants imposed no condition-related charges at all. *See, e.g.*, *id.* at ¶¶ 34, 41, 69-71. Defendants did not charge either Plaintiff for any of the replacement or cleaning charges set forth in the second part of the Move-Out Addendum, which are prefaced by similarly "mandatory" language. *See, e.g.*, ECF No. 26-9 (Berger Lease) at JRK0000198 ("The following charges will be assessed regardless of how long resident occupies the apartment"). As to both Plaintiffs, it is undisputed that Defendants deviated from the Move-Out Addendum, and therefore did not enforce it as written.

Defendants also did not attempt to obtain from the named Plaintiffs a waiver of their rights under the security deposit statute. To the contrary, Defendants included numerous other references to their statutory obligations and tenants' rights under that statute throughout the lease, including explicitly and unambiguously telling tenants that they would not be charged for reasonable wear and tear. *See* ECF No. 26-3 (Peebles Lease) at JRK0000056 ¶ 37 ("You'll be liable for the following charges, if applicable: unpaid rent; repairs or ***damages beyond normal wear and tear***, water/sewer charges and other amounts provided by law. Your security deposit will be handled pursuant to MGL ch. 186 sec 15B…."); *id*. at JRK000058 (informing Peebles that the landlord may deduct from her security deposit "[a] reasonable amount necessary to repay any damage caused to the premises by the Lessee … , ***reasonable wear and tear excluded***," among other permissible deductions); ECF No. 26-9 (Berger Lease) at JRK0000172 ¶ 37 ("You'll be liable for

the following charges, if applicable: unpaid rent; repairs or ***damages beyond normal wear and tear***, water/sewer charges and other amounts provided by law. Your security deposit will be handled pursuant to MGL ch. 186 sec 15B….”); *id*. at JRK0000175 (informing Berger that the landlord may deduct from his security deposit “[a] reasonable amount necessary to repay any damage caused to the premises by the Lessee … , ***reasonable wear and tear excluded***,” among other permissible deductions). Plaintiffs’ leases also explained that inadequate cleaning could result in property damage, for which they would be charged. *See* ECF No. 26-3 (Peebles Lease) at JRK0000056 ¶ 35; ECF No. 26-9 (Berger Lease) at JRK0000172 ¶ 35. A lease, like any contract, must be read as a whole, such that all provisions are harmonious. *See Commerce Ins. Co. v. Blackburn*, 964 N.E.2d 1005, 1007 (Mass. App. Ct. 2012). Taken as a whole, the lease conveys to tenants that they will not be charged for reasonable wear and tear, but that they ***may*** be charged for damage and excess wear, including excess wear or damage resulting from inadequate cleaning. The Move-Out Addendum thus did not attempt to waive Plaintiffs’ rights under the statute.

In short, there is no evidence that Defendants attempted to enforce any part of the Move-Out Addendum (let alone any part that conflicts with the Massachusetts security deposit statute), or that Defendants attempted to obtain a waiver from Plaintiffs of their rights under that statute. In the absence of such evidence, Plaintiffs’ claim under § 15B(6)(c) fails.

### C.     Plaintiffs’ invocation of outdated case law does not save their c. 93A claim.

Plaintiffs attempt to escape the limitations imposed by § 15B(6)(c) by invoking abrogated case law in support of their c. 93A claim. They assert that they need not show any injury or harm caused by the allegedly unlawful lease provision. This is wrong as a matter of law. In 2013, the Supreme Judicial Court, rejecting its prior holding in *Leardi v. Brown*, held that a “violation of the legal right that has created the unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself.” *Tyler v. Michaels Stores, Inc.*,

984 N.E.2d 737, 745 (Mass. 2013). The SJC further explained that, "[t]o the extent that … *Leardi* can be read to signify that 'invasion' of a consumer plaintiff's established legal right in a manner that qualifies as an unfair or deceptive act under G.L. c. 93A, § 2, automatically entitles the plaintiff to at least nominal damages (and attorney's fees), we do not follow the *Leardi* decision." *Id.* at 745.[3/] Since then, courts have consistently required that the allegedly unfair or deceptive conduct have caused an "actual loss" to a plaintiff—and in the case of proposed class members, that the loss is determinable without the need for individualized inquiries. *See, e.g.*, *Nightingale v. National Grid USA Serv. Co.*, 2023 U.S. Dist. LEXIS 60653, at *4-5 (D. Mass. Apr. 6, 2023) (Gorton, J.); *Kwaak v. Pfizer, Inc.*, 881 N.E.2d 812, 817-18 (Mass. App. Ct. 2008); *see also, e.g.*, *Conley v. Roseland Residential Trust*, 442 F. Supp. 3d 443, 457-59 (D. Mass. 2020) (no injury under c. 93A when plaintiffs received what they bargained for).

The named Plaintiffs here must therefore show more than the mere inclusion of a noncompliant provision in their leases; they must show some sort of loss or harm, whether through enforcement of that provision or otherwise. As discussed above, they have not been harmed by alleged enforcement of the Move-Out Addendum, or by allegedly waiving any rights they had under the security deposit statute. Plaintiffs' biggest issue with the Move-Out Addendum seems to be that it required them to have their apartment units "professionally clean[ed]." And yet the undisputed record shows that neither named Plaintiff engaged or paid for such professional cleaning. *See* ECF No. 29 at ¶ 27 (Peebles), ¶ 63 (Berger). This means they were not harmed. It

---

[3/]    Unlike *Leardi*, the SJC's decision in *Hershenow* has not been abrogated, and its outcome is the same as that warranted here. Even if the Move-Out Addendum were "statutorily noncompliant," the Addendum "did not and could not deter the plaintiffs from asserting any legal rights." *Hershenow v. Enter. Rent-a-Car Co. of Bos.*, 840 N.E.2d 526, 534 (Mass. 2006). As in *Hershenow*, any non-conforming provisions in the lease do not "cause[] a loss" under c. 93A. *Id.* at 535.

also means they are not suitable representatives for a proposed Move-Out Addendum class. *See* ECF No. 27 at 16.

In the absence of any offending conduct by Defendants or harm to Plaintiffs, Plaintiffs' claims under § 15B(6)(c) and c. 93A fail.

## II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PEEBLES' CLAIMS.

Rather than offering any analysis, Plaintiffs resort to listing statutory provisions, hoping the Court will simply believe them when they say Defendants violated these provisions and, in so doing, harmed them. Opp. at 5-6. But even a cursory review of the evidentiary record shows that, in addition to the failure of Plaintiffs' challenge to the Move-Out Addendum under § 15B(6)(c), there was no violation of any other provision of the Massachusetts security deposit statute with respect to Peebles.[4]

### A.   Plaintiffs have not offered any definition of "reasonable wear and tear" that would include the charges imposed against Peebles' security deposit.

Under § 15B(4)(iii), a landlord may deduct "a reasonable amount necessary to repair any damage … reasonable wear and tear excluded." That is what Defendants did for Peebles. Without any actual evidence that the charges to Peebles' security deposit were unjustified, Plaintiffs attack the people who imposed them. Plaintiffs claim that Peebles' security deposit deductions were made by "untrained staff" who made "standardless" decisions because Defendants themselves "provided no training to its staff regarding what is legally definable as damage beyond normal wear and tear."

---

[4]    If the Court were to credit Plaintiffs' argument that the Move-Out Addendum violates §15B(6)(c)—which for the reasons discussed above, it does not—but credited Defendants' argument that the deductions to Plaintiffs' security deposits were otherwise lawful under § 15B(4), but for the improper lease provisions, Plaintiffs can recover only the amounts withheld from their security deposits, and not treble damages or attorney's fees. As explained by the Supreme Judicial Court, § 15B(7) applies only to a failure to comply with § 15B(6)(a), (d), or (e), and a violation of some other provision of § 15B(6) (as in the case of *Phillips*, § 15B(6)(b)) does not transform into a violation of § 15B(6)(e) for these purposes. *See Phillips v. Equity Res. Mgmt.*, 85 N.E.3d 12, 18 (Mass. 2017) ("We conclude … that § 15B(6)(e) cannot be triggered by failing to return the amount forfeited under other subsections of § 15B(6).").

Opp. at 3, 10; *see* ECF No. 31 at ¶ 5. Plaintiffs have not cited any record evidence supporting these contentions.[5] As such, they must be disregarded, even if ultimately immaterial to the issues presented (as they are). *See* Fed. R. Civ. P. 56(e)(3).

Moreover, Plaintiffs have not identified any standard that they claim Defendants should have provided to the property staff to guide their decisions regarding "reasonable wear and tear." Plaintiffs have not cited any statutory definitions, cases, industry guidelines, necessary trainings, or identifiable standards they say should have governed the end-of-tenancy apartment assessments at the One Webster or Stevens Pond properties at issue in this case. That is because no such standards, definitions, or guidelines exist. Nor have Plaintiffs offered an expert who can opine on a definable standard for "damage beyond reasonable wear and tear" that Plaintiffs contend Defendants did not apply.

To borrow Justice Stewart's infamous line, a property manager "know[s] it when [they] see it" with respect to damage beyond reasonable wear and tear. *See Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring). As JRK's 30(b)(6) designee, Mr. Manzo, testified: it's a judgment call made by the property manager, who has experience in this area and is entrusted to make such judgment calls, based on laying their own eyes on the unit at the time the charges are assessed. *See, e.g.*, ECF No. 19-12 (Manzo Dep.) at 41:12-42:2; ECF No. 29 at ¶¶ 9, 10, 12-14. The on-site property staff's training comes from their experience in the industry and at the specific property, which they use to make an informed assessment and determination, through physical inspection of the unit, as to what constitutes damage or wear beyond "reasonable wear and tear." ECF No. 29 at ¶¶ 9, 10, 12-14. Defendants' written policy advises property staff to consult with

---

[5]    *See* Defendants' Response to Plaintiffs Branda Peebles' and Joshua Berger's Statement of Facts in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Motion for Summary Judgment (ECF No. 31), filed contemporaneously herewith, at ¶ 5.

experts, such as carpet cleaners, to determine the extent of any excess wear or damage and the costs of repair. *See id.* at ¶ 13. On-site property staff take into account a number of factors in making these assessments, including the length of the tenancy and the condition of the unit at move-out as compared to move-in. ECF No. 26-1 (Manzo Decl.) ¶ 14. This type of situation-dependent, unit-specific evaluation is something that on-site property staff learn to do on the job, not through extensive formal manuals or presentations.

Plaintiffs might wish there were some discernable standard for "reasonable wear and tear" to which they could point so they could argue that Defendants somehow did not appropriately apply that standard. But wishful thinking does not earn summary judgment. Plaintiffs have neither adduced nor pointed to any evidence suggesting that Defendants violated the security deposit statute by either applying an objectively incorrect or unsupported standard to determine suitable charges, or by improperly deducting from Peebles' security deposit solely for "reasonable wear and tear" under the circumstances. *See* Fed. R. Civ. P. 56(c) (a party asserting that a fact cannot be genuinely disputed has to support the assertion by "citing to particular parts of materials in the record"). In the absence of any such evidence, a factfinder could not find in Peebles' favor.

### B. Peebles cannot benefit from an inference in her favor as to the nature of her security deposit deductions where probative evidence no longer exists because of her own conduct.

In the short statement of facts in support of their cross-motion, Plaintiffs contend that JRK has "no evidence" that the carpet cleaning and painting charges assessed to Peebles were for "anything beyond reasonable wear and tear." ECF No. 31 at ¶¶ 2-3; *see* Opp. at 3. As the cross-movant (if that motion is even properly before the Court), Peebles bears the burden of proving that the charges ***were*** for "reasonable wear and tear" and thus were improperly assessed. She is not entitled to a presumption on that fact. And even if Defendants were deemed to bear the burden of

justifying the charges post-hoc, their ability to do so has been impeded by Peebles' delays and destruction of evidence.

Notably, a finding of spoliation is appropriate (as are sanctions) because Peebles failed to preserve highly probative evidence after suing Defendants. *See* ECF No. 29 at ¶¶ 47-52 (admitting that Peebles did not preserve photographs). Make no mistake: Defendants are not seeking to punish a residential tenant for failing to keep track of photos of her apartment, as Plaintiffs' brief improperly alleges. *See* Opp. at 10. Defendants are simply seeking to hold a plaintiff who voluntarily chose to sue them accountable to the rules of the road in civil litigation. Those rules are basic and known to every attorney, and they include taking steps to preserve relevant evidence after instigating litigation. *See* ECF No. 24 at 10 (collecting cases). Once Peebles commenced this litigation, she and her attorney had an obligation to preserve relevant evidence in their possession. And yet they both failed to do this.

At a minimum, Peebles should not be permitted to argue that the deductions from her security deposit were impermissible because they were for "reasonable wear and tear." The absence of additional evidence regarding the unit's condition at move-out is directly the result of Peebles' own conduct. She should not benefit from her unreasonable delay in challenging her security deposit deductions (not until a year after she moved out) or her unexplained failure to provide probative evidence to her attorney, and certainly not from negligent destruction of that evidence during discovery. *See* ECF No. 24 at 10; ECF No. 29 at ¶¶ 43-52.

### C.    Concluding that the charges imposed on Peebles' security deposit are for "reasonable wear and tear" based on their descriptions on the Peebles SODA will create perverse incentives for landlords.

If the Court concludes, based on the undisputed record, that the charges assessed to Peebles' security deposit were for "reasonable wear and tear," then it will effectively hold that that substantial damage or wear to a carpet requiring power scrubbing and dying constitutes

"reasonable wear and tear," and therefore no landlord in Massachusetts can impose such charges on a residential tenant, regardless of the circumstances or the condition of the unit. It would also effectively hold that any damage to a wall that would require some amount of touch-up paint constitutes "reasonable wear and tear," and therefore cannot be charged to a tenant who leaves such damage. This puts the Court in the role of statewide property manager. Worse still, it disincentivizes landlords from making nuanced decisions about what costs tenants should bear, including where such decisions are made *in the tenant's favor*. For example, if the Court draws a hard line in this case, that will incentivize a landlord to charge an outgoing tenant for the full cost of repairing damaged drywall rather than assuming the cost of the drywall repair and simply charging the tenant for the touch-up paint that follows the repair. A charge for "damaged drywall repair" may sound more serious than a charge for "touch-up paint," but both charges resulted from the same underlying damage. Both are valid unless proven otherwise by the tenant, something both Plaintiffs have failed to do here.

As the record reflects, Peebles benefitted from exactly this sort of nuanced decisionmaking. Defendants made a judgment call *in her favor*: Defendants estimated that carpet cleaning would cost $80.00 (on Peebles' Move-Out Addendum); Defendants were charged $155.00 to address substantial issues with the carpet in her unit (including $75.00 for spot dye); and yet Defendants chose to charge her just $65.00. *See* ECF No. 29 at ¶¶ 34-36, 41. If this calculation does not constitute "a reasonable amount necessary to repair any damage caused to the dwelling unit by the tenant …, reasonable wear and tear excluded," then it's hard to know what does. *See* G.L. c. 186, § 15B(4)(iii).

**D.    Peebles' new claim that she did not receive an "itemized list of damages" is not pled in the Complaint and not supported by the documentary evidence.**

In their brief, Plaintiffs introduce a new claim: that Peebles did not receive an "itemized list of damages … itemizing in precise detail the nature of the damage and of the repairs necessary to correct such damage," as required by § 15B(4)(iii). Opp. at 3. This claim is nowhere pled in the Complaint, and therefore is waived. Moreover, it is undisputed that Peebles received a SODA, signed by the landlord under the pains and penalties of perjury, that listed specifically what charges were imposed on her security deposit and for what: $50.00 for "Touch Up Paint," $65.00 for "Carpet Clean per Lease," and $44.75 for "Utility Billing." ECF No. 26-5 (Peebles SODA). Listing each of these charges on its own line makes it by definition "itemized." The Peebles SODA further stated, "[i]f you should have any questions regarding this statement, please contact our office," and provided a phone number for the office. *Id*. Peebles never called with questions. ECF No. 29 at ¶¶ 43-45. Perhaps she did not have questions because she knew the amounts charged were reasonable. Perhaps she did not have questions because the amounts she was charged were *less* than the estimates she had received for such damage in the Move-Out Addendum to her lease.

Peebles has not cited any case law defining an "itemized list of damages" as something different than what Defendants provided. Instead, Peebles' argument appears to rest on her claim that Defendants "have no evidence" that these charges were "for anything beyond normal wear and tear." Opp. at 3. For the reasons discussed above, this argument does not pass muster.

## III.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BERGER'S CLAIMS.

The undisputed record establishes that: (1) even though Berger's lease contained the Move-Out Addendum, he did not have his apartment or carpet professionally cleaned upon move out, (2) no one at the property told him he had to do so, (3) he availed himself of the opportunity to attend a move-out walk-through, and (4) Defendants did not deduct any charges from his security deposit

based on the condition of his unit after he moved out. ECF No. 29 at ¶¶ 59, 63, 64, 67, 69, 70. It is further undisputed that Berger ***admitted*** that he has no claim for improper deductions to his security deposit. *Id.* ¶ 75. On this record, no reasonable factfinder could conclude that Defendants violated § 15B(4)(iii) as to Berger, or that Berger waived—or that Defendants attempted to enforce a waiver of—his rights under the Massachusetts security deposit statute in violation of § 15B(6)(c). *See also supra*, Section I.B.

Berger has waived any other claims he may have. Plaintiffs' brief makes no mention of Berger's purported claim, whether under § 15B(6)(e) or c. 93A, that the balance of his security deposit was returned to him more than thirty days after the end of his tenancy. Plaintiffs' brief asserts only that the utility charge deducted from his security deposit was "made unlawful by the inclusion of the non-compliant lease provisions." Opp. at 2; *see id.* at 4, 10. In failing to respond to Defendants' summary judgment motion on this point, Berger has abandoned this claim and waived any right to relief on it. *See Montany v. Univ. of New England*, 858 F.3d 34, 41 (1st Cir. 2017) (failure to oppose summary judgment on a claim constitutes abandonment of that claim); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) ("By failing to make this argument in his opposition to summary judgment, [plaintiff] has failed to preserve this claim. . . . Even an issue raised in the complaint but ignored at summary judgment may be deemed waived."); *Frady v. C. R. Bard, Inc.*, No. 1:19-cv-12549-ADB, 2020 U.S. Dist. LEXIS 76168, at *7 (D. Mass. Apr. 30, 2020) (holding that "Plaintiff has . . . waived several claims by failing to address them in her opposition to Defendant's motion" for summary judgment).

## IV.   PLAINTIFFS' CROSS-MOTION SHOULD BE DENIED BECAUSE IT IS BOTH LATE AND PROCEDURALLY IMPROPER.

Plaintiffs filed their barebones cross-motion for summary judgment on April 29, 2024, well after the April 8, 2024 deadline for dispositive motions. *See* ECF No. 16. There is no rule

permitting delayed cross-motions in this Court, particularly where the operative case schedule imposed an affirmative deadline for summary judgment motions. Even if Plaintiffs were permitted to cross-move when opposing Defendants' summary judgment motion, they failed to timely file their opposition (and their cross-motion). *See* ECF Nos. 28-31 (filed between 11:11pm and 11:18pm on April 29, after the 6:00pm deadline imposed by the local rules). All of these untimely documents should be disregarded, and are further indicators of class counsel's lack of diligence in representing the interests of the proposed class. *See* ECF No. 27 at 16-17; *see also Fin. Res. Network, Inc. v. Brown & Brown, Inc.*, 867 F. Supp. 153, 174-75 (D. Mass. 2012) (granting motion to strike untimely cross-motion for summary judgment).

## V.    TO THE EXTENT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IS ON BEHALF OF A YET-TO-BE-CERTIFIED CLASS, PLAINTIFFS' BRIEF DEMONSTRATES WHY RELIEF CANNOT BE GRANTED ON A CLASSWIDE BASIS, AND WHY NO CLASS CAN BE CERTIFIED ON THESE CLAIMS.

Plaintiffs purport to move for summary judgment individually ***and*** on a classwide basis. ECF No. 30. As discussed above, their individual claims fail factually and legally, and their motion is procedurally improper. As applied to any alleged class, Plaintiffs' motion fails as well. Indeed, the named Plaintiffs' differing move-out experiences alone demonstrate that these claims cannot be determined on a classwide basis.

If, as Plaintiffs incorrectly posit, Defendants unlawfully deducted for reasonable wear and tear from Peebles' security deposit, they did so because of an inaccurate, uninformed determination of what constitutes "reasonable wear and tear." Opp. at 2, 10. That does not mean, however, that the same inaccurate, uninformed decision was made for the unit next door, or for one at a different property overseen by a different property manager. The only way to determine if any other tenant was charged for reasonable wear and tear is to look at what amount, if any, was deducted from their security deposit, and any available documentation concerning the condition of their unit at

move-out. Similarly, if, as Plaintiffs posit, Defendants failed to provide a sufficiently itemized list of damages at the end of Peebles' tenancy, the same is not true of every other tenant at every other one of Defendants' properties in Massachusetts. It is not true for Berger, for example, because there was no damage to itemize for him. And it is not true for countless other tenants as well.

This leaves Plaintiffs with the argument that the inclusion of the Move-Out Addendum in Defendants' Massachusetts leases during a certain time period *de facto* results in charges to remedy reasonable wear and tear, insufficiently itemized damages lists, and the failure to return the proper amount to tenants at the end of their tenancies.[6/] Neither the facts nor the law support this conclusion, and the undisputed record demonstrates that the Move-Out Addendum was ***not enforced as written***. *See* ECF No. 29 at ¶¶ 28, 30, 34, 37, 38, 41, 64, 65, 69-71. No one was charged any amounts merely for remedying reasonable wear and tear, and tenants received a security deposit refund consistent with the "wear and tear" requirement of the statute. There is no way Plaintiffs can prove otherwise on a classwide basis. And to the extent Defendants charged any given tenant for something that, when evaluated by a factfinder, might be considered a charge to remedy "reasonable wear and tear," that is an individualized question specific to each tenant. Whether any given tenant was provided a document that did not sufficiently articulate the nature and cost of the damages to their unit is also an individualized question. The questions before this Court are whether these are true for Peebles and Berger specifically. On the undisputed record, they are not. And there is no possible way they can be true for the proposed class of "all" tenants.

---

[6/]      Plaintiffs ask the Court to assume that "Defendants used the same addendum at their other properties not named in this action based upon Mr. Manzo be [sic] instructed not to answer that particular question at a deposition." ECF No. 31 at ¶ 6. Mr. Manzo was instructed not to answer because, as Plaintiffs' counsel admitted in a footnote to this allegation, this instruction was "consistent with the deposition parameters prior to class certification," *id.* at n.1, and consistent with the agreed-upon scope of discovery. If Plaintiffs' counsel took issue with Defendants' objections to the 30(b)(6) deposition notices, he could have sought relief from the Court, but he did not. No inferences can be drawn from the instruction not to answer. And even if they could, the fact that a similar Move-Out Addendum was included in leases at other properties would not cure the ample deficiencies in Plaintiffs' motion that preclude summary judgment in their favor.

**CONCLUSION**

For the forgoing reasons, Defendants request that this Court (i) grant their Motion for Summary Judgment as to all counts alleged in the Complaint, (ii) deny Plaintiffs' Cross-Motion for Summary Judgment, and (iii) award Defendants their reasonable attorneys' fees and costs in this litigation.

Respectfully submitted,

**JRK PROPERTY HOLDINGS, INC., STEVENS POND APARTMENTS PROPERTY OWNER, LLC, and ONE WEBSTER APARTMENTS PROPERTY OWNER, LLC,**

By their attorneys,

*/s/ Mathilda S. McGee-Tubb*
Thomas H. Wintner (BBO # 667329)
Mathilda S. McGee-Tubb (BBO # 687434)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
617.542.6000 (telephone)
617.542.2241 (fax)
twintner@mintz.com
msmcgee-tubb@mintz.com

Dated: May 10, 2024

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on May 10, 2024.

By:   <u>*/s/ Mathilda S. McGee-Tubb*</u>